ROGERS v BOARD OF EDUCATION, TRENTON PUBLIC SCHOOLS

1. STATUTES—INTERPRETATION OF STATUTES—SCHOOLS AND SCHOOL
DISTRICTS—TEACHERS—LEAVE OF ABSENCE—RIGHT TO HEARING.

A statute which provides that any teacher who is involuntarily
placed on leave of absence shall have the right to a hearing
unequivocally indicates that the leave precedes the hearing and
no pretermination hearing is contemplated; statutory language
which is plain, certain, and unambiguous does not require
interpretation (MCLA 38.112).

2. STATUTES—SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—LEAVE OF
ABSENCE—RIGHT TO HEARING—CONSTITUTIONAL LAW—DUE
PROCESS.

A statute creating and defining employment rights may also
establish the extent and nature of such rights, and a statute
which provides that a teacher who is involuntarily placed on
leave of absence shall thereafter have the right to a hearing
does not deny such a teacher due process of law in violation of
the U.S. Constitution by not providing for a hearing prior to
the teacher's being placed on leave (US Const, Am XIV; MCLA
38.112).

3. STATUTES—SCHOOLS AND SCHOOL DISTRICTS—TEACHERS TENURE ACT
—SCHOOL BOARDS.

The fundamental purpose of the teacher tenure act is to provide

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 68 Am Jur 2d, Schools §§ 8, 9, 192.
73 Am Jur 2d, Statutes § 142 et seq.
Notice of intention to discharge teacher, or not to renew contract,
sufficiency under statutes requiring such notice. 92 ALR2d 751.
Request for hearing, sufficiency under statute requiring hearing on
request before discharge. 89 ALR2d 1018.
[3] 68 Am Jur 2d, Schools §§ 149, 151.
Teachers' tenure statutes. 110 ALR 791, s. 113 ALR 1495, 127 ALR
1298.
[5] 68 Am Jur 2d, Schools § 162.
What constitutes "incompetency" or "inefficiency" as a ground for
dismissal or demotion of public school teacher. 4 ALR3d 1090.
[6] 63 Am Jur 2d, Public Officers and Employees § 305 et seq.
68 Am Jur 2d, Schools § 143.

employment security against arbitrary actions of a controlling school board (MCLA 38.71 *et seq.*).

4. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—LEAVE OF ABSENCE—
   HEARING—NOTICE.
   A teacher who was placed on an involuntary leave of absence and who subsequently requested a hearing was not entitled to new notice of the purpose of the hearing; the letter she received from the school board identifying the reason for the leave of absence was notice.

5. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—LEAVE OF ABSENCE—
   HEARING—EVIDENCE—SUFFICIENCY OF EVIDENCE.
   A decision of a school board upholding the grant of an involuntary leave of absence to a teacher because of physical inability to return to teaching was not unwarranted nor clearly contrary to the evidence where the evidence constituted admissions by the teacher acknowledging her physical impairment preventing her from discharging her duties and she never disputed that she was unable to return to work on the date in question.

6. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—LEAVE OF ABSENCE—
   SICK LEAVE—COLLECTIVE BARGAINING AGREEMENTS—INCOME
   PROTECTION.
   Award of 65 days of income protection to a teacher placed on a lawfully imposed leave of absence who had received 25 days' payment, of 90 days provided in a collective bargaining agreement in event of sick leave, was error where the bargaining agreement also provided that such income protection would cease upon the commencement of a leave of absence.

Appeal from Wayne, Nathan J. Kaufman, J. Submitted Division 1 February 14, 1975, at Detroit. (Docket No. 19378.) Decided June 10, 1975. Leave to appeal applied for.

Petition in circuit court by Louise Rogers for review of a decision of the State Tenure Commission, upholding a decision of the Board of Education, Trenton Public Schools, placing petitioner on an involuntary leave of absence. Affirmed. Petitioner appeals by leave granted, and cross-appeal by the Board of Education on the issue of payment of income protection benefits. Affirmed in part, reversed in part.

*Levin, Levin, Garvett & Dill* (by *Robert J. Finkel),* for petitioner.

*Raubolt & MacDonald* (by *Thomas L. Chambers),* for the Board of Education, Trenton Public Schools.

Before: V. J. Brennan, P. J., and D. E. Holbrook, Jr. and O'Hara,* JJ.

D. E. Holbrook, Jr., J. This appeal arises out of the defendant school system's actions in placing the plaintiff, a tenured teacher, on an involuntary leave of absence for the remainder of the school year. After a hearing before the controlling school board and an affirmance of the initial decision, the Teacher Tenure Commission and then the circuit court reviewed the case, both affirming the propriety of the leave of absence. However, the circuit court further granted plaintiff 65 days of income protection benefits pursuant to the collective bargaining agreement. Leave to appeal was granted by this Court.

Louise Rogers had a history of ophthamological ailments during her tenure with the defendant, including cataracts, a floating retina, and a detached retina. These difficulties contributed to an absence record which was far from exemplary:

(a) 1967–1968 academic year, 94 1/2 days (out of 187 days);

(b) 1968–1969 academic year, 72 days (out of 187 days); and

(c) 1969–1970 academic year, 43 days (out of 187 days).

In August, 1970, Miss Rogers notified the personnel director of her inability to return to work in

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

September due to complications from surgery for a detached retina. At an October 12, 1970, meeting arranged by the personnel director plaintiff again indicated that she was unable to work at the time and she would not know for three more weeks when she would be capable of resuming her teaching duties. She was then informed that if she did not request a leave of absence, it would be recommended to the school board that she be given an involuntary leave of absence pursuant to statutory authority. MCLA 38.112; MSA 15.2012. Thereafter, plaintiff received a letter from the defendant dated October 13, 1970, notifying her of the granting of an involuntary leave of absence as well as her statutory right to a hearing, private or public, before the school board.

Until the leave of absence was effectuated, the plaintiff was provided with income protection benefits comparable to her salary as required by the operative collective bargaining agreement. However, these payments were terminated according to the terms of the labor contract once the leave of absence was imposed. The income protection benefits were to be available for a maximum of 90 days under the contract but, due to the leave of absence, the plaintiff received only 25 days of payment.

Initially, a hearing was scheduled for late November. Since plaintiff required more time to obtain additional expert testimony and to prepare her presentation, two adjournments were eventually granted. A hearing was held on January 13, 1971.

The evidence adduced at the hearing clearly demonstrated the plaintiff's ability to resume her teaching responsibilities as of the dates she was examined in November and December. Neverthe-

less, expert medical testimony of her condition and ability to work as of October 12, 1970, was completely lacking. The school board affirmed its original decision, continuing the leave of absence for the remainder of the academic year.

Plaintiff contends that the teacher tenure act[1] requires an evidentiary hearing prior to the imposition of an involuntary leave of absence for physical or mental disability and, in the event this Court finds such a hearing is not statutorily mandated, the law is unconstitutional, denying due process of law.

MCLA 38.112; MSA 15.2012 provides that:

"Any controlling board upon written request of a teacher may grant leave of absence for a period not to exceed one year, subject to renewal at the will of the board: Provided, That without request, leave of absence because of physical or mental disability may be granted by any controlling board for a period not to exceed one year: Provided further, That any teacher *so placed on leave of absence shall have the right to a hearing* on such unrequested leave of absence in accordance with the provisions for a hearing in article four, section four of this act: Provided, That no leave of absence shall serve to terminate continuing tenure previously acquired under this act." (Emphasis supplied.)

When statutory language is "plain, certain, and unambiguous," there is no necessity for interpretation. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 248–249; 191 NW2d 307, 309–310 (1971). The phrase "That any teacher *so placed* on leave of absence shall have the right to a hearing" unequivocally indicates that the involuntary leave precedes the hearing and no pretermination hearing is contemplated.

[1] MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.*

Thus, the next inquiry is whether the US Constitution, Am XIV, § 1, guaranteeing due process of law, requires that a hearing be provided before a school board imposes such a leave.

In *Arnett v Kennedy,* 416 US 134; 94 S Ct 1633; 40 L Ed 2d 15 (1974), the US Supreme Court considered the constitutional claims of a nonprobationary Federal employee who was discharged by his supervisor. Although he had received written charges pursuant to the Lloyd-LaFollette Act, 5 USC 7501, and had the opportunity to file a written answer, the employee challenged the statutory denial of a pretermination evidentiary hearing. He asserted that the failure to afford such a hearing constituted a denial of procedural due process.

The Court rejected the employee's contention, noting that the statute creating and defining the employment rights may also establish the extent and nature of such rights. *Arnett v Kennedy, supra,* at 151–154. Denying the employee's claim that his expectancy of employment was a property interest subject to divestment only after an opportunity for a full adversary hearing, the Court, at p 151, quoted from *Board of Regents v Roth,* 408 US 564, 577; 92 S Ct 2701, 2709; 33 L Ed 2d 548, 561 (1972):

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

Concluding that there was no constitutional right mandating a prior hearing, the Court stated:

"where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet.

"To conclude otherwise would require us to hold that although Congress chose to enact what was essentially a legislative compromise, and with unmistakable clarity granted governmental employees security against being dismissed without "cause," but refused to accord them a full adversary hearing for the determination of "cause," it was constitutionally disabled from making such a choice. We would be holding that federal employees had been granted, as a result of the enactment of the Lloyd-LaFollette Act, not merely that which Congress had given them in the first part of a sentence, but that which Congress had expressly withheld from them in the latter part of the same sentence."

*Arnett v Kennedy, supra* at 153–154.

Despite plaintiff's attempts to distinguish *Arnett v Kennedy, supra,* and reliance on *Snead v Department of Social Services of the City of New York,* 355 F Supp 764 (SDNY 1973), it is clear that MCLA 38.112; MSA 15.2012, passes constitutional muster. Plaintiff maintains that *Snead, supra,* controls the case at bar.

In *Snead, supra,* a city employee with permanent civil service status was placed on an involuntary leave of absence for mental unfitness. The state statute authorizing such action on the certification of a medical officer without a prior adversary hearing was declared unconstitutional by the three-judge District Court. Nevertheless, the US Supreme Court vacated the judgment and ordered a remand for further consideration in light of *Arnett v Kennedy, supra. Civil Service Commission v Snead,* 416 US 977; 94 S Ct 2376; 40 L Ed 2d 755 (1974).

Essentially, the only provision present in the *Snead* statute which is absent in the instant case is the medical certification. Due to the nature of the employment and the attendant exposure to youth in conjunction with the conceded factual background of plaintiff's ailments, this procedural step did not deprive the plaintiff of due process. Plaintiff had repeatedly informed the school board of her ophthamological illnesses and professed an inability to fulfill her teaching obligations.

Both *Arnett, supra,* and *Snead, supra,* are controlling of this case; there is no constitutional necessity for a pretermination hearing.

A more strenuous and exacting interpretation of the constitutional right of due process by the Michigan courts is unjustified. The fundamental purpose of the teacher tenure act is to provide employment security against arbitrary actions of a controlling school board. *Rehberg v Board of Education of Melvindale, Ecorse Township School District No 11, Wayne County,* 330 Mich 541; 48 NW2d 142 (1951). MCLA 38.112; MSA 15.2012, provides the teacher with the opportunity for a hearing to rectify any potential miscarriage of justice. Due to the school board's obligations to the community and its students, it would be unreasonable to prohibit a board from taking the appropriate actions when necessary to temporarily remove a physically or mentally impaired instructor who cannot adequately discharge the classroom duties.

This is particularly clear in this situation since the students had had six weeks of substitute teachers, no continuity of instructional program, and the end of this lengthy period of educational disruption was still uncertain. Had the defendant school board failed to act as it did, it would have severely jeopardized the students who are entitled to a regular and stable educational program.

This Court expresses no opinion as to the reasonableness of the duration of the involuntary leave of absence set by the school board. Although it might have been argued that granting an involuntary leave for the remaining 8-1/2 months was unwarranted and that conceivably there was the possibility of complete recovery enabling the plaintiff to resume her position within the ensuing month, such a contention has not been raised or addressed by the plaintiff.

Next, plaintiff alleges that the proceedings were defective as she received no notice of the purpose of the hearing. Such a contention is without merit. Plaintiff was placed on an involuntary leave of absence and, as a result, requested a hearing as guaranteed by statute, MCLA 38.112; MSA 15.2012. Aside from the fact the hearing was arranged at her demand, for her own purposes, the only possible controversy to be resolved was whether the school board was justified in its actions of October, 1970. Therefore formal notice beyond the letter identifying the cause of the involuntary leave of absence was unnecessary.

Additionally, plaintiff challenges the sufficiency of the evidence for the school board's holding, sustaining its imposition of the leave of absence.

Although the school board only presented testimony through its personnel director and superintendent, such evidence constituted admissions by the plaintiff on October 12, 1970, acknowledging her physical impairment preventing her from discharging her teaching responsibilities. However, it was never disputed by plaintiff that she was unable to return on October 12, 1970, or before three more weeks. The hearing provided plaintiff with an opportunity to demonstrate the contrary. Thus, the decision was not unwarranted and not clearly contrary to the evidence presented.

Lastly, plaintiff contends that the hearing eventually held in January, 1971, was not an impartial hearing as required by the due process clause of the US Constitution, Amendment XIV. Aside from allegations that the parties bringing the charges and the attorney presenting the evidence against plaintiff were allies of the school board, the plaintiff argues that the controlling school board was merely reviewing its earlier October, 1970 decision.

This impartial hearing challenge cannot be sustained. As noted earlier in this opinion, the rights created under the teacher tenure act do not exist under the Constitution but are granted exclusively by statute. Hence, the procedural as well as substantive dimensions of this property right are part and parcel of the legislative definition and content of the right.

The enactment was designed to provide a party placed on an involuntary leave of absence the opportunity to contest arbitrary action and to compel evidence of cause. The controlling school board was specifically designated to adjudicate the claims by the complainant (e.g. school principal) and the teacher.

In October, 1970, leave was not the product of a decision but purely a perfunctory, administrative action taken upon the plaintiff's absence records. Pursuant to statute, a hearing was available to her to require an adjudication of whether there was cause for her leave of absence. Such initial action, as taken, did not constitute bias rendering the hearing impartial; the hearing was not to review but to require proofs and evidence to justify the statutorily approved administrative action.

The charge that the attorney presenting the testimony of cause, the personnel director, the

supervisor, and the school principal were allies of the school board such that they were all eager for the same outcome and disposition is unsupported. The board was not an opponent having an interest completely opposite of the plaintiff's. The controlling school board represents the public interest in securing an educational system for its students. These aforementioned witnesses were providing testimony challenging the plaintiff's continued employment status while unable to discharge her duties. The board does not have an interest in sustaining either "side" beyond protecting the student body. A school board is not so intimately involved in the employment status of its teachers as to be partial.

Defendant has cross-appealed challenging the trial court's modification allowing the remaining 65 days of income protection benefits.

The Professional Agreement between the Trenton Public School District and the Trenton Education Association sets forth that:

"Income protection granted because of illness will cease upon the commencement of maternity leave or leave of absence." Article XXII (Sick leave).

Once the involuntary leave of absence was lawfully imposed by defendant, the operative collective bargaining agreement authorized the termination of these payments. Consequently the trial court's award of 65 days of income protection was improper.

Affirmed in part; reversed in part.