FERRARIO v ESCANABA BOARD OF EDUCATION

Docket No. 75602. Argued April 9, 1986 (Calendar No. 2). Decided
October 31, 1986.

Richard Ferrario appealed his dismissal as a teacher by the
Escanaba Board of Education to the Teacher Tenure Commis-
sion. The commission granted Ferrario summary judgment on
the ground that the board had shown bias or a probability of
bias by placing itself in the role of accuser as well as judge, and
ordered reinstatement with back pay. The Delta Circuit Court,
Edward A. Quinnell, J., remanded the matter to the Tenure
Commission for a hearing on the merits. The Court of Appeals,
R. M. MAHER, P.J., and WAHLS and HATHAWAY, JJ., affirmed,
and awarded Ferrario unconditional back pay in an unpub-
lished opinion per curiam (Docket No. 71195). The board ap-
peals.

In a unanimous opinion by Justice CAVANAGH, the Supreme
Court *held:*

The Tenure Commission failed to properly review the record
of Ferrario's dismissal to determine whether actual bias or a
high probability of actual bias existed. The record as a whole
fails to substantiate the commission's finding of lack of due
process. Remand for review de novo on the merits is required.

1. A discharge of a tenured teacher may be made only for
reasonable and just cause, and only after following procedures
established under the teacher tenure act. Where a charge of
misconduct is brought against a teacher, the board of education
must determine whether to proceed. If it decides to conduct a
hearing, the school district administration must appear on
behalf of the person bringing the charge, while the role of the
board of education is to represent the public. The burden of
proof is on the district to show reasonable and just cause for
discharge.

2. The Teacher Tenure Commission acts as a board of review

REFERENCES

Am Jur 2d, Schools §§ 185 *et seq.,* 202, 208 *et seq.*

Who is "teacher" for purposes of tenure statute. 94 ALR3d 141.

Construction and effect of tenure provisions of contract or statute
governing employment of faculty member by college or univer-
sity. 66 ALR3d 1018.

for appeals of tenure decisions of controlling boards of education. The commission must review all questions of fact and law de novo, and should review and consider the record made before the controlling board. Review of a commission decision involves a determination from the record whether there is competent, material, and substantial evidence on the whole to support the commission's findings.

3. In this case, only the board minutes raised an inference of bias and required further investigation by the commission. However, by themselves they do not provide substantial evidence of actual bias or a high probability of bias. Viewed in a light most favorable to the board, they are not sufficient to establish lack of a genuine issue of material fact, and thus summary judgment should have been denied. The hearing transcript provides a valid defense to the claim of bias. Moreover, Ferrario raised no objection regarding bias prior to or during his hearing.

4. Review of the record reveals no due process violation. The board performed its statutory duty in determining whether there was probable cause to proceed with the charges against Ferrario. Its determination whether the charges in fact were substantiated by the evidence presented at the hearing was not a reevaluation of its initial decision. Although actual bias need not be shown to establish violation of due process rights, it must be shown that the risk of unfairness was intolerably high or that the probability of unfairness is too high to be constitutionally tolerable. An examination of the full procedures used at the hearing fails to substantiate Ferrario's claims.

5. An award of back pay by the Tenure Commission on the basis of procedural error prior to a determination on the merits, where a teacher's discharge was for cause, does not further the purpose of the teacher tenure act. A final determination of an award and an amount of back pay should occur after all appeals are completed. In addition, where a school board discharges a tenured teacher following a hearing on the merits, the Tenure Commission, upon finding procedural or due process error on appeal that cannot be corrected on remand to the board, should not order reinstatement before conducting review de novo on the merits. If no hearing on the merits was conducted by the board and the commission concludes that the teacher cannot receive a hearing by the board that comports with due process, the commission likewise should conduct a hearing on the merits before determining if reinstatement is proper.

Reversed and remanded for review de novo on the merits.

1. SCHOOLS — ADMINISTRATIVE LAW — TEACHER TENURE COMMISSION.

Review of all questions of fact and law regarding the discharge of a tenured teacher must be made de novo by the Teacher Tenure Commission (MCL 38.139; MSA 15.2039).

2. SCHOOLS — ADMINISTRATIVE LAW — TEACHER TENURE COMMISSION — REINSTATEMENT — AWARD OF BACK PAY — APPEAL.

The Teacher Tenure Commission should neither order the reinstatement of nor award back pay to a discharged tenured teacher until it reaches a decision on the merits; should either party appeal the decision of the commission, an award of back pay or an order of reinstatement will be held in abeyance pending the completion of all appeals.

*Foster, Swift, Collins & Coey, P.C.* (by *Lynwood E. •Beekman* and *Timothy P. Greeley*), for the plaintiff.

*Butch, Quinn, Rosemurgy, Jardis & Valkanoff, P.C.* (by *Robert S. Rosemurgy* and *Terry F. Burkhart*), for the defendant.

CAVANAGH, J. The State Tenure Commission granted summary judgment to plaintiff Ferrario because it found that Ferrario's right to due process at his discharge hearing before the local board was violated. In this appeal, the Escanaba Area Public Schools Board of Education contends that the Court of Appeals erred as a matter of fact and law in finding substantial evidence to support the Tenure Commission's finding. The board further contends that the Court of Appeals erred in granting Ferrario back pay from the date of the board's decision discharging him until the Teacher Tenure Commission completes a de novo review of the case on the merits.

We find that the Teacher Tenure Commission failed to properly review the record involving Ferrario's dismissal to determine whether actual bias or a high probability of actual bias existed. The

record as a whole fails to substantiate the commission's findings of lack of due process.

Moreover, if such bias had been found, the commission should have performed a de novo review on the merits before ordering reinstatement or back pay for the plaintiff. While the lower courts properly remanded the case to the Tenure Commission for consideration of the merits, they erred in affirming the commission's finding of a due process violation and in awarding back pay to Ferrario.

## I. FACTS

Plaintiff Ferrario[1] was a teacher in the Escanaba Area High School. On April 27, 1981, the assistant superintendent of the Escanaba Schools received a written statement from a student of alleged improper conduct by Ferrario. This statement was forwarded, with a memorandum, to the secretary of the Board of Education.[2] In response to the charge, the secretary called a board meeting by

[1] Plaintiff Ferrario died on October 14, 1985. This case is being continued on behalf of his estate. Ferrario's counsel concedes that any award of back pay would cease as of the date of Mr. Ferrario's death. Ferrario's death has made the question of reinstatement to his teaching position moot.

[2] To: Gerald C. Anderson          Date: April 27, 1981—6:00 P.M.
From: J. Mongue, Supt.
Regarding: Personnel Issue

Attached, you will find a copy of a statement of a student [name omitted] which implicates Mr. Richard Ferrario, a Senior High School Social Studies teacher, in actions alleged to be perverted.

I met with the student and his mother on Sunday afternoon, April 26th, and with Mr. Ferrario on Monday, April 27th. *In my judgment, there appears to be possible basis for the allegations by the student.*

I have, therefore, suspended Mr. Ferrario, with pay, and recommend that the Board of Education take appropriate action in accordance with the tenure laws in the State of Michigan. [Emphasis added.]

written notice dated April 27, 1981.[3] The board
met on April 28, 1981, and decided to proceed with
a discharge hearing.[4] Mr. Ferrario was informed of

---

[3] To: Board of Education                    Date: April 27, 1981
   From: Gerald C. Anderson, Secretary
   Regarding: Personnel Issue

   The Superintendent of Schools has provided me with infor-
mation regarding a teacher whose behavior with a student
appears to be questionable.
   *I am satisfied that there are sufficient grounds to call a full
board meeting to consider possible action against the teacher.*
   I am, therefore, requesting a full board meeting to be held
Tuesday, April 28, 1981 at 7:30 P.M. at the Wylie Administra-
tion Center.
                                           /s/  Gerald C. Anderson
   [Emphasis added.]

[4] Escanaba Area Public Schools
   Executive Session Meeting Minutes
   April 28, 1981
   7:30 P.M.

                         * * *

   The purpose of the Executive Session was restated:
   1. Negotiation Strategy
   2. Personnel Problem—Charges Brought Against Richard
Ferrario

                         * * *

   *2-A Dr. Mongue reviewed the charges of improper conduct
that were brought against Richard Ferrario by an 11th grade
student at the high school. After reviewing all the charges and
Mr. Ferrario's personnel file,* a motion was made by Dr. Brad-
ley and supported by Pat Sundstrom, that additional informa-
tion and testimony be gathered from two students who recently
volunteered similar information.
   *This motion was then amended* by Dr. Bradley and supported
by Mr. Paulin, *to bring formal charges against Mr. Ferrario
under the Michigan Tenure Act* and to continue Mr. Ferrario's
suspension with pay until a hearing can be held. This hearing
cannot be held in less than thirty days or more than forty-five
days according to Michigan Tenure Law. Motion passed 6-0.
   Mr. Ferrario was contacted in person by Dr. Mongue immedi-
ately following the meeting to discuss with him the board's
decision. He was also advised of his rights. A letter was to be
sent to Mr. Ferrario as a follow up.

   Motion by Mr. Anderson, supported by Mr. Carne, that the
meeting be adjourned.

the school board's decision, the nature of the charges, the time of the scheduled hearing, and of his rights under the teacher tenure act in a letter from the assistant superintendent dated May 11, 1981.[5]

Respectfully submitted,

/s/ Thomas C. Vitito
[Emphasis added.]

[5] May 11, 1981

Mr. Richard Ferrario
1401 North 23rd Street, Lot #25
Escanaba, Michigan 49829

Dear Mr. Ferrario:

As we previously advised, *the Escanaba Board of Education at an executive session held on April 28, 1981, brought and filed the following charges against you:*
1. Improper conduct consisting of sexual advances and misconduct on Wednesday, April 8, 1981, involving a student at the Escanaba Area Public High School. The exact nature of the conduct and the identity of the student has been described to you in detail by Dr. Mongue at a meeting held on April 27, 1981. Any additional information relative to this charge may be obtained at the administration office from Assistant Superintendent, Thomas C. Vitito.
2. Consistent with number one, improper conduct with other students at the Escanaba Area High School on many occasions during the past three school years. Information concerning this conduct and the students may be obtained from the Assistant Superintendent at the administration office. These instances of misconduct will be considered by the Board of Education in connection with charge number one above.
This will confirm that Dr. Mongue has discussed the charges and your rights on both April 27, 1981 and the evening of April 28, 1981. For your benefit, I have attached a copy of the rights provided you by tenure law, which statements are incorporated by reference.
A hearing has been scheduled for you with the Board of Education on June 10, 1981 at 7:30 P.M. in the Wylie Administration Center. In connection with that hearing, you have the following rights and privileges:
A. The teacher may not be discharged or demoted except for reasonable and just cause and only after such charges, notice, hearing·and determination thereof are made as provided by the Act.

A hearing was held on June 10, 1981. At Ferrario's request, the hearing was private and the witnesses were sequestered. Mr. Ferrario, the administration, and the board were each represented by

B. The teacher has a right to a hearing, if he so requests, and the hearing shall be scheduled not less than thirty (30) nor more than forty-five (45) days from the date of the filing of such charges. (The charges were filed in this instance on April 28, 1981).

C. No action concerning demotion nor [sic] dismissal will be taken except by majority vote of the members of the Board of Education.

D. Both the teacher and the person filing the charges may be represented by counsel.

E. The hearing shall be public or private at the option of the teacher.

F. Testimony will be on oath or affirmation.

G. The Board of Education will employ a stenographer to make a full record of the proceedings, and the teacher will be provided with a complete transcript thereof within ten (10) days after the conclusion of the hearing.

H. The hearing will be concluded by a decision in writing within fifteen (15) days after the termination of the hearing, and a copy of the decision will be furnished the teacher within five (5) days after the decision is rendered.

I. The Board of Education will subpoena witnesses and documentary evidence on behalf of the teacher, at his request, and if any person shall refuse to appear on his behalf the Board of Education will petition the Circuit Court of Delta County and request a subpoena commanding that person to appear before the Board of Education at the time of the hearing.

J. The teacher has a right of appeal as provided by the Act, being Article VI of the Michigan Tenure of Teachers' Act.

If you or your counsel have any questions in advance of the hearing, please advise.

Respectfully   yours,

/s/  Thomas  C.  Vitito
       Assistant   Superintendent
       Escanaba Area Public Schools

TCV/ms

pc: Mr. Gil Truax, President, Board of Education
     Dr. Joseph Mongue, Superintendent of Schools
     Mr. Gerald Anderson, Secretary, Board of Education

[Emphasis added.]

counsel. All exhibits were introduced by stipulation of counsel. In his opening statement, Ferrario's counsel stipulated on the record that Ferrario had been given adequate notice of the charge against him and had been properly advised of his rights under the teacher tenure act. Prior to the taking of testimony, counsel for the board advised the board members that their function was to decide impartially whether there was reasonable and just cause to support the charges brought on the basis of the evidence produced at the hearing.[6]

A board member asked:

> Can we assume the person is innocent until proven guilty?
> Mr. DeGrand (Board Attorney): Very much so, yes, you may.

The administration and Mr. Ferrario each presented witnesses. Ferrario's testimony substantially corroborated that of the complainant's.

At the close of testimony, the attorney for the administration stated that "the charges were issued by this Board" and that they had been filed by the administration, which had established Fer-

---

[6] Members of the Board of Education, by document dated May 11, 1981, *charges were issued by this Board of Education* concerning Richard Ferrario. The charge, a charge was issued concerning Mr. Ferrario. The charge is, improper conduct consisting of sexual advances and misconduct on Wednesday, April 8, 1981, involving a student at the Escanaba Public High School. That is the charge.

\* \* \*

We submit, and *I am representing the Administration who filed the charges, that the Administration has established without any doubt that Mr. Ferrario engaged in improper conduct* consisting of sexual advances and misconduct on Wednesday, April 8, 1981, involving a student at the Escanaba Area Public High School. [Emphasis added.]

rario's improper conduct beyond a doubt.[7] In his closing statement, Ferrario's counsel discussed the role of the board.

> Charges are not brought by this Board, the Board merely determined that they should be heard and determined by this Board. If they had been brought by this Board, I would have to raise a question about the Board's impartiality to hear and determine them. They were brought by the Administration on the complaint of a student, which complaint you have seen, tendered to you in writing, and which has been—complaint has been amplified by the testimony that has been presented to you.

At the close of the hearing, the board president

---

[7] At this point I would like to advise the Board members concerning this hearing. Your function in this case is to impartially decide the matter which is being brought before you. The test which you are to apply in this matter is whether or not there is reasonable and just cause to support the charges which have been brought. Not having advised you earlier, I do not know specifically what each of you or all of you might be aware of as to the charges which have been brought against the teacher. However, I do caution you and strongly advise you to disregard any knowledge at this point that you have of those charges and to start this hearing much as a jury would in a lawsuit or a criminal case. What I am saying to you is that you must keep an open mind. You are to keep an open mind throughout the proceedings and you are to decide the case on all of the evidence as you hear it and all of the evidence in toto.

As your counsel in this case, I will not be specifically involved in presenting evidence. However, I will advise you if there are questions of admissibility of evidence and if there are questions as to what evidence you might legally base your decision upon.

Generally, the rules of evidence in this case are somewhat more liberal than if we were in court to a degree hearsay would be admissible. However, I should caution you that you cannot decide this matter strictly on hearsay. There must be other supportive direct evidence and not hearsay evidence.

If any of the board members have any specific questions about your function in this matter before we begin and before we get into subsequent testimony, I would entertain them for you at this time if you would like.

advised the members that Mr. Ferrario was to be presumed innocent until there was a finding of fact to the contrary within the guidelines of the tenure law. Until a decision was reached by the board, there was to be no discussion of the case with anyone, including other board members.[8] The board's attorney reminded the members that he was present merely to advise the board of legal standards and not to give his opinion of the case.

In a decision dated June 17, 1981, the Board of Education unanimously found reasonable and just cause to terminate Mr. Ferrario's employment with the school district. The board stated that its decision was based solely on the official charge of improper conduct consisting of sexual advances and misconduct and on the evidence presented at the hearing. The board noted that Ferrario's coun-

---

[8] Thank you, gentlemen. I wish at this time, as President of the Board, to make a very brief statement.

And that is that at the completion of these hearings, Mr. Ferrario has requested an executive session of the Board. That session is now coming to a close, I would assume.

In our society and in all circumstances where we have an accused in any set of circumstances, be it the criminal justice system or be it a school, the presumption of innocence may remain with the accused until such time as a finding of the fact. And in this case, a finding of the fact by the School Board members. Therefore, because Mr. Ferrario has requested an executive session and because there has not, at this point in time, been a finding of fact, I am suggesting and even going beyond that, and saying that this will not be discussed outside this room.

At this point, there has been, as I said, no finding of fact and I caution everyone in this room, who is not a Board member, to not discuss this case outside the room.

I caution Board members not to discuss it among themselves or among persons outside this room, except as a full Board to make a finding of fact.

The finding of facts will come within the guidelines of the tenure laws that will be researched to make sure that we stay within the confines of the tenure laws, and at that time, that finding of fact and decision by this Board will be submitted to all parties involved.

sel had raised no objection to the board's procedure at any time.[9]

The letter dated May 11, 1981, advising Ferrario of the board's initial decision to proceed to formal hearing, had not been entered into evidence and thus was not considered by the board in reaching its decision. The parties had stipulated to the letter's admission into evidence should Ferrario appeal from the board's decision.[10]

Plaintiff Ferrario filed a claim of appeal with the Michigan Teacher Tenure Commission. The commission granted Ferrario's motion for summary judgment on the basis that the school board had shown bias or a probability of bias by placing itself in the role of accuser as well as judge. This decision was based on a review of the board minutes, the notice of April 27, and the May 11 letter. The minutes stated that the board had moved "to bring formal charges against Mr. Ferrario" under

---

[9] The attorney for the teacher, to this time, has raised no objections to the procedure followed thus far. [Opinion and Decision of Board of Education, June 17, 1981.]

[10] In deciding this matter, the Board is considering only the "Official Charge" which is attached hereto, dated June 10, 1981, under the letterhead of the Escanaba Area Public Schools. To complete the record if the matter is appealed, counsel for the administration and the teacher have stipulated to the admission of a letter dated May 11, 1981, from the Administration to Mr. Ferrario. The Board has not considered any information in such correspondence, except the "official charge." A copy of Attorney Rosemurgy's [administration attorney] letter of June 15, 1981, addressed to Attorney DeGrand [board attorney], is made a part of the record in explanation of the official charge and the previous letter of May 11, 1981. Specifically, the Board has disregarded, and has not considered, the "second charge" made in the letter of May 11, 1981.

The Board's decision in the matter is based solely upon the evidence elicited at the hearing on June 10, 1981, and the exhibits introduced at said hearing. [Opinion and Decision of Board of Education, June 17, 1981.]

the teacher tenure act. The commission refused to consider any further review of the official record of proceedings on the basis that board minutes cannot be altered or supplemented by parol testimony. *Tavener v Elk Rapids Rural Agricultural School Dist,* 341 Mich 244; 67 NW2d 136 (1954). Without further review of the case on its merits, the commission ordered the reinstatement of Ferrario with back pay.[11]

On appeal, the circuit court ordered that the matter be remanded to the Tenure Commission for a hearing on the merits. The circuit judge stated that he would not have found that the local board was prejudiced if he had been sitting on the Tenure Commission. However, since there was evidence on the record which could support the Tenure Commission's finding that the local board's actions gave the appearance of partiality, the court affirmed. While the circuit court did not find the hearing "so defective that it could be considered a nullity" as the Tenure Commission had, it allowed Ferrario back pay from the date of its decision until a final decision on the merits by the commission. The court held that the school board need not reinstate Ferrario prior to a final decision on the merits.[12]

Plaintiff Ferrario appealed the circuit court's order. The Court of Appeals affirmed that there was sufficient evidence to support the Tenure Commission's finding that the Board of Education had acted to bring charges against the plaintiff. The Court of Appeals found "an impermissibly great risk of bias" where "a controlling board becomes involved in the decision whether to bring charges

[11] Decision and Order of the State Tenure Commission, July 30, 1982.

[12] Order of the Delta Circuit Court, Edward A. Quinnell, J., April 18, 1983.

against a teacher, acts to bring those charges, and later sits as decisionmaker." The Court affirmed the remand to the Tenure Commission and awarded Ferrario unconditional back pay.

> Here, because bias undermined the initial decision to proceed with charges against the teacher, the defect in plaintiff's discharge is the school board's involvement in the filing of charges against plaintiff. Therefore, the defect preceded the decision to proceed on the charges, rendering the entire procedure tainted. Where the decision to proceed with charges is improperly made, conditional back pay is a sufficient remedy. However, this is not true where plaintiff claims that, absent improper bias, the school board may never have decided to proceed with charges. Thus, plaintiff is entitled to unconditional back pay from the date of discharge until the Tenure Commission reaches a decision on the merits, subject to a mitigation determination pursuant to *Shiffer v Gibraltar Schools,* 393 Mich 190; 224 NW2d 255 (1974).[13]

This Court granted leave to appeal.

### II. THE TEACHER TENURE ACT

The teacher tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.,* was enacted to protect teachers from arbitrary and unreasonable practices. A discharge may be made only for reasonable and just cause, and only after following the procedures established by the act. MCL 38.101; MSA 15.2001. *Rehberg v Melvindale, Ecorse Twp Bd of Ed,* 330 Mich 541, 547; 48 NW2d 142 (1951) *(Rehberg I).*

Under the act, a board must determine whether or not to proceed on a given charge. MCL 38.102; MSA 15.2002 provides:

---

13 Unpublished opinion per curiam of the Court of Appeals, decided November 30, 1984 (Docket No. 71195).

All charges against a teacher shall be made in writing, signed by the person making the same, and filed with the secretary, clerk or other designated officer of the controlling board. Charges concerning the character of professional services shall be filed at least 60 days before the close of the school year. The controlling board, if it decides to proceed upon such charges, shall furnish the teacher with a written statement of the charges including a statement of the teacher's rights under this article, and shall, at the option of the teacher, provide for a hearing to take place not less than 30 nor more than 45 days after the filing of such charges.

If the board decides to proceed with a hearing, the administration appears on behalf of the student who has filed the charges. The burden of proof is on the school district to show reasonable and just cause for discharging the tenured teacher.[14] The role of the board of education is to represent the public.[15]

The proper rules and regulations of the hearing before the board are established in the teacher tenure act.[16] The act permits the board the right to suspend a teacher with pay until the board reaches a final decision.[17]

A teacher who has tenure may appeal any decision of the controlling board to the State Tenure Commission.[18] The Tenure Commission was established to act as a board of review for all appeals from the decision of a controlling board.[19] The

[14] *Sutherby v Gobles Bd of Ed,* 73 Mich App 506, 508; 252 NW2d 503 (1977), remanded 401 Mich 833 (1977).

[15] *Rogers v Trenton Bd of Ed,* 61 Mich App 682, 692; 233 NW2d 141 (1975).

[16] MCL 38.104; MSA 15.2004.

[17] MCL 38.103; MSA 15.2003.

[18] MCL 38.121; MSA 15.2021.

[19] MCL 38.139; MSA 15.2039.

commission must make a de novo decision on all questions of fact and law. *Long v Royal Oak Bd of Ed,* 350 Mich 324; 86 NW2d 275 (1957). The Tenure Commission should review and consider the record made before the controlling board. *Rehberg I, supra,* pp 546, 548; *Rehberg v Melvindale, Ecorse Twp Bd of Ed,* 345 Mich 731; 77 NW2d 131 (1956) *(Rehberg II).*

Either party may appeal a decision of the Tenure Commission. The function of the reviewing courts is to determine from the record whether there is competent, material, and substantial evidence on the whole to support the Tenure Commission's findings.[20] This review entails a degree of qualitative and quantitative evaluation of the evidence considered by the agency. *Beebee v Haslett Public Schools (After Remand),* 406 Mich 224, 231; 278 NW2d 37 (1979).

Plaintiff Ferrario alleges that the following items relate to the issue of bias or prejudgment:

(1) The memorandum to the board secretary from the superintendent stating that the superintendent had met with the student and his mother and believed that there "appears to be a possible basis for the allegations by the student." (See footnote 2.)

(2) The notice from the board secretary to the board members stating that he was "satisfied that there are sufficient grounds to call a full board meeting to consider possible action against the teacher." (See footnote 3.)

(3) The minutes of the board meeting which state that "Dr. Mongue reviewed the charges of improper conduct that were brought against Richard Ferrario by an 11th grade student at the high school" and the "motion was then amended . . . to bring formal charges against Mr. Ferrario." (See footnote 4.)

(4) The May 11, 1981, letter from the assistant super-

[20] Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d).

intendent to Ferrario which stated that "the Escanaba Board of Education . . . brought and filed the following charges against you." (See footnote 5.)

In the present case, a formal complaint which complied with the statute was received by the administration and forwarded to the board's secretary. At this time, the board was required to determine the necessity of proceeding with the charges under MCL 38.102; MSA 15.2002. The memorandum and the notice suggest that the superintendent and the board secretary were acting with proper caution before bringing the matter before the board.

The board minutes contain conflicting statements about who is bringing the charges. The minutes state that an eleventh grade student brought the charge against Ferrario and that the board moved to bring formal charges against Ferrario. The board now contends that it misstated itself by using the word "bring" rather than the statutory term "proceed" in the final paragraph. Moreover, the board contends that the commission's reliance upon the grammar or choice of verbs in the minutes as substantial and material evidence of impropriety is misplaced.

A school board is not composed of lawyers but of lay persons from the community. The choice of the verb "bring" as opposed to "proceed" may have been an error or may have reflected a lack of understanding on the part of the board of its role. We believe that the conflicting statements in the board minutes including the statement that the board was "bringing" charges raised a question of fact concerning possible bias that should have

been resolved by the Tenure Commission by further examining the record of the hearing.[21]

The letter of May 11, 1981, paraphrases the board's minutes. It served to give Ferrario written notice of the charges against him and to explain his rights under the tenure act as mandated by MCL 38.102; MSA 15.2002. Copies of the letter were sent only to the superintendent, the board president, and the board secretary. Therefore, only two of seven board members who voted unanimously to dismiss Ferrario had received copies of the May 11 letter.

This letter was not admitted into evidence at the discharge hearing. The board expressly stated that its decision rested solely on the official charge of misconduct and the evidence presented at the hearing. (See footnote 9.) In our opinion, only the board minutes raised an inference of bias and required further investigation by the Tenure Commission.

### III. SUMMARY JUDGMENT

The State Tenure Commission has a motion practice similar to that of Michigan courts.[22] A motion for summary judgment may be granted when the moving party has failed to state a claim

[21] We agree with the board that the distinction between the meaning of the word "bring" (to convey, lead, carry, or cause to come along . . .) and the word "proceed" (to begin and carry on an action, process, or movement) is quite subtle. *Webster's New Collegiate Dictionary* (1980), pp 137, 910. The distinction in the common meaning of each word as it relates to the field of law is almost nil. The definition for "bring" is "[t]o advance or set forth (charges or evidence, for example) in a court." The definition for "proceed" is "[t]o institute and conduct legal action." *The American Heritage Dictionary of the English Language* (1981), pp 166, 1043.

[22] Michigan Administrative Code, 1979 AC, R 38.151-38.159. The three motions involving peremptory disposition of a case are motion for accelerated judgment (R 38.154), motion for summary judgment (R 38.155), and motion for default judgment (R 38.157).

upon which relief can be granted, when the controlling board has failed to state a valid defense to the claim against it, or there is no genuine issue as to material fact, except as to the relief to be granted.[23] When a party moves for summary judgment on the basis of no genuine issue of material fact, the commission must consider the parties' affidavits, pleadings, admissions, and other documentary evidence then filed in the action or submitted by the parties.[24]

The courts are liberal in finding that a "genuine issue" does indeed exist. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). The evidence presented should be interpreted to give the benefit of any reasonable doubt to the opposing party, i.e., any evidence should be viewed in a light most favorable to the nonmoving party.

The Tenure Commission granted summary judgment to plaintiff Ferrario solely on the basis of its review of the memorandum, the board minutes, and the May 11, 1981, letter. The commission refused further review of the procedures at the hearing on the basis that the board minutes cannot be altered or supplemented by parol evidence.

> First, we must note that the official minutes of a school board cannot be impugned by any member's mental reservations, nor can board minutes be altered or supplemented by parol testimony. *Tavener v Elk Rapids Rural Agriculture [sic] School District,* 341 Mich 244 (1954). The board minutes here clearly indicate that the board, itself, acted to bring the charges against appellant. As of that moment, the controlling board became the accuser as a matter of law. Beyond this point, appellee board's continued participation as the finder of fact must be viewed as inherently improper. [Decision and Order of the State Tenure Commission.]

---

[23] 1979 AC, R 38.155(1)(a)-(c).

[24] 1979 AC, R 38.155(2).

The commission erred in its reliance on *Tavener, supra. Tavener* involved an action in assumpsit (a contract dispute) by an architect against a school district over an amount agreed upon by the parties for the architect's services. At trial, the plaintiff architect introduced the testimony of three former board members, and the defendant school district offered the testimony of two board members. This Court did not find the testimony of all the board members inadmissible. It held that the record established a dispute and that the existence of a dispute did not disprove plaintiff's claims of a contract.

The Court allowed the testimony of the board members, whether for the plaintiff or the defendant, with the exception of a Mr. Barnes. Mr. Barnes' testimony was found inadmissible because he claimed that the board had approved the architect's plan "with reservations" not in the official record. The Court disallowed this "deviation or modification" of the recorded instrument.

> When the law requires municipal bodies to keep records of their official action in the legislative business conducted at their meetings, the whole policy of the law would be defeated if they could rest partly in writing and partly in parol, and the true official history of their acts would perish with the living witnesses, or fluctuate with their conflicting memories. No authority was found, and we think none ought to be, which would permit official records to be received as either partial or uncertain memorials. That which is not established by the written records, fairly construed, cannot be shown to vary them. They are intended to serve as perpetual evidence, and no unwritten proofs can have this permanence. [*Tavener, supra,* pp 251-252.]

In the present case, the school board was not

offering the "mental reservations" or the testimony of board members to substantiate its claims of misstatement or error. The board presented the transcript of the hearing as evidence of the procedural safeguards offered at the discharge hearing to prove its claim of due process. The transcript of the hearing will hardly "perish with the living witnesses, or fluctuate with their conflicting memories." It is not "a partial or uncertain memorial[ ]" or an "unwritten proof" with no permanence. The transcript itself is an official record specifically required by the teacher tenure act[25] and should have been examined by the Tenure Commission.[26]

In reviewing the board minutes, this Court agrees with the Tenure Commission that the minutes might serve as evidence of bias. These minutes are material to the issue of bias and competent to a degree. By themselves, however, they do not provide substantial evidence of actual bias or the high probability of bias. The inconsistent statements within the minutes as to who was bringing the charges against Ferrario raise a question of fact. When the minutes are viewed in a light most favorable to the nonmoving party, they are not sufficient to establish no genuine issue of material fact.[27] Thus, summary judgment should have been denied.

The hearing transcript provides a valid defense to the claim of bias asserted by Ferrario.[28] The comments of the attorneys and board members at the opening and close of the hearing and the procedural safeguards of the hearing including the sequestration of witnesses, separate attorneys for

---

[25] MCL 38.104(e); MSA 15.2004(e).

[26] 1979 AC, R 38.155. See *Arnold v Crestwood Bd of Ed,* 87 Mich App 625; 277 NW2d 158 (1978).

[27] 1979 AC, R 38.155(1)(c).

[28] 1979 AC, R 38.155(1)(b).

the board of education, the charged teacher, and the charging party; sequestration of all persons from the board of education during deliberation; adherence to the rules of evidence; complete cooperation with respect to all documents and charges; and a written opinion by the board of education based upon the testimony, stipulations, and evidence elicited at the hearing, establish the board's attempt to provide Ferrario with a fair hearing. Moreover, no objection was raised by plaintiff prior to or during his hearing regarding bias on the part of the school board or any improper procedure.

### IV. DUE PROCESS

Plaintiff Ferrario claims that the commission and the courts have reviewed and considered every piece of evidence which might bear on the question of bias. He further contends that the board minutes, notice of the meeting, and the May 11 letter clearly establish that the board had placed itself in an accusatory role and had prejudged the case prior to the hearing. Ferrario argues that the board's actions require its disqualification under *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975), where the decisionmaker "might have prejudged the case because of prior participation as an accuser, investigator, factfinder or initial decisionmaker."

The *Crampton* case involved a determination by this Court that the plaintiff has been denied due process of law in appealing the loss of his driver's license before the Licensing Appeal Board because the board was staffed by a full-time law enforcement official. The two-member board was composed of a representative of the Secretary of State and a police officer from the Lansing Police Department whose employment involved the arrest and prosecution of drunk drivers.

In an opinion authored by Justice LEVIN, this Court held:

> Crampton was denied due process of law. Appeal board panels which are membered by full-time law enforcement officials are not fair and impartial tribunals to adjudge a law enforcement dispute between a citizen and a police officer. [*Crampton, supra*, p 350.]

The Court identified four situations as presenting constitutionally unacceptable risks of bias. Those situations are where a judge or decision-maker:

> (1) has a pecuniary interest in the outcome;
> (2) has been the target of personal abuse or criticism from the party before him;
> (3) is "enmeshed in [other] matters involving petitioner . . ."; or
> (4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker. [*Id.*, 351.]

In *Crampton*, Justice LEVIN reviewed United States Supreme Court decisions in which individual adjudicators were disqualified because they had personally conducted the initial investigation, amassed evidence, and filed and prosecuted the charges.

> The Court held in *In re Murchison*, 349 US 133; 75 S Ct 623; 99 L Ed 942 (1955), that a Michigan one-man grand juror could not try for contempt witnesses who had appeared before him and whom he had charged with perjury and refusal to answer questions.
> In *Goldberg v Kelly*, 397 US 254, 271; 90 S Ct 1011; 25 L Ed 2d 287 (1970), the Court held that procedural due process required that welfare recip-

ients be afforded an evidentiary hearing before termination of benefits and declared that "of course, an impartial decision maker is essential." "[P]rior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review."

In *Morrissey v Brewer,* 408 US 471, 485, 489; 92 S Ct 2593; 33 L Ed 2d 484, 497 (1972), the Supreme Court held that a parolee is entitled to a hearing before a "neutral and detached" board before his parole is revoked and to a preliminary determination that there is probable cause to hold him pending that hearing. The preliminary determination "that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." [*Id.,* 353.]

Justice LEVIN then distinguished these cases from those instances where a board must make a preliminary decision on the issue of probable cause and then conduct a full evidentiary hearing. *Withrow v Larkin,* 421 US 35; 95 S Ct 1456; 43 L Ed 2d 712 (1975). *Withrow* "eschewed a flat rule that prior involvement of a tribunal as accuser, investigator or prosecutor necessarily precludes participation as adjudicator."

In *Withrow,* a state examining board, composed of practicing physicians, first investigates and issues findings and conclusions regarding probable cause to believe a physician has violated the statutes regulating the practice of medicine and then determines whether in fact the statutes have been violated. The Court concluded that "the combination of investigative and adjudicative functions does not, *without more,* constitute a due process violation . . . ." [*Id.,* p 354.]

*Withrow, supra,* p 58, does preclude such partici-

pation where the special facts and circumstances present in a case show that "the risk of unfairness is intolerably high."

In the present case, the plaintiff has made no allegation that the makeup of the school board itself created any inherent bias such as existed in *Crampton.* Plaintiff claims that in performing its statutory duty to determine whether it should proceed with charges, the board had become biased or that an impermissible appearance of bias existed.

In *Hortonville Joint School Dist No 1 v Hortonville Ed Ass'n,* 426 US 482; 96 S Ct 2308; 49 L Ed 2d 1 (1976), a similar claim of bias was made against a local board because of an alleged prosecutorial role and, in addition, its role as a party to collective bargaining negotiations. The United States Supreme Court stated:

> Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. *Withrow v Larkin* [*supra*]; *FTC v Cement Institute,* 333 US 683, 700-703 [68 S Ct 793; 92 L Ed 1010] (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not "capable of judging a particular controversy fairly on the basis of its own circumstances." *United States v Morgan,* 313 US 409, 421 [61 S Ct 999; 85 L Ed 1429] (1941); see also *FTC v Cement Institute, supra,* at 701.
>
> Respondents' claim and the Wisconsin Supreme Court's holding reduce to the argument that the Board was biased because it negotiated with the teachers on behalf of the school district without reaching agreement and learned about the reasons for the strike in the course of negotiating. From those premises the Wisconsin court concluded that the Board lost its statutory power to determine

that the strike and persistent refusal to terminate it amounted to conduct serious enough to warrant discharge of the strikers. Wisconsin statutes vest in the Board the power to discharge its employees, a power of every employer, whether it is negotiated with the employees or not. The Fourteenth Amendment permits a court to strip the Board of the otherwise unremarkable power the Wisconsin Legislature has given it only if the Board's prior involvement in negotiating with the teachers means that it cannot act consistently with due process.

Due process, as this Court has repeatedly held, is a term that "negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v McElvoy,* 367 US 886, 895 [81 S Ct 1743; 6 L Ed 2d 1230] (1961). Determining what process is due in a given setting requires the Court to take into account the individual's stake in the decision at issue as well as the State's interest in a particular procedure for making it. See *Mathews v Eldridge,* 424 US 319 [96 S Ct 893; 47 L Ed 2d 18] (1976); *Arnett v Kennedy,* 416 US 134, 168 [94 S Ct 1633; 40 L Ed 2d 15] (1974) (Powell, J., concurring); *id.,* at 188 (White, J., concurring and dissenting); *Goldberg v Kelly,* 397 US 254, 263-266 [90 S Ct 1011; 25 L Ed 2d 287] (1970). Our assessment of the interests of the parties in this case leads to the conclusion that this is a very different case from *Morrissey v Brewer* [408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972)], and that the Board's prior role as negotiator does not disqualify it to decide that the public interest in maintaining uninterrupted classroom work required that teachers striking in violation of the state law be discharged. [426 US 493-494.]

Respondents have failed to demonstrate that the decision to terminate their employment was infected by the sort of bias that we have held to disqualify other decisionmakers as a matter of federal due process. A showing that the Board was "involved" in the events preceding this decision, in light of the important interest in leaving with the

Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decision-making power. Cf. *Withrow v Larkin,* 421 US at 47. *Accordingly, we hold that the Due Process of the Fourteenth Amendment did not guarantee respondents that the decision to terminate their employment would be made or reviewed by a body other than the School Board.* [426 US 496-497. Emphasis added.]

Recently, this Court upheld the constitutionality of the decision by the Director of the Department of Social Services. *City of Livonia v DSS,* 423 Mich 466; 378 NW2d 402 (1985). In *Livonia,* the city argued that they had been denied due process of law because the Director of the DSS participated in a decision which granted a license for a group home for the mentally handicapped over the city's objections. The director had reviewed the city's initial complaints and issued a final decision after reviewing the hearing officer's findings. *Id.,* 509-510.

This Court cited *Hortonville, supra,* noting that mere familiarity with the facts of a case obtained during performance of a statutory duty does not disqualify a decisionmaker. Nor is disqualification required because the decisionmaker has taken a public position on the issue, without a specific showing of incapability of judging a particular case fairly. *Id.,* 510.

In *Withrow, supra,* 56, 58, the United States Supreme Court discussed situations where a decisionmaker is involved in both the initial and final adjudicative proceedings:

Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person

named in the warrant has committed it. Judges also preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial. Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge's presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence. Nor has it been thought that a judge is disqualified from presiding over injunction proceedings because he has initially assessed the facts in issuing or denying a temporary restraining order or a preliminary injunction.

\* \* \*

*The initial . . . determination of probable cause and the ultimate adjudication have different bases and purposes. The fact that the same agency makes them in tandem and that they relate to the same issues does not result in a procedural due process violation.* Clearly, if the initial view of the facts based on the evidence derived from nonadversarial processes as a practical or legal matter foreclosed fair and effective consideration at a subsequent adversary hearing leading to ultimate decision, a substantial due process question would be raised. But in our view, that is not this case. [Emphasis added.]

The school board in the present case, like the DSS director in *Livonia,* was not reevaluating its initial decision. The board was fulfilling a statutory duty similar to that in *Withrow* to determine if there was probable cause to proceed with the charges before determining if the charges were in fact substantiated by the evidence presented at the hearing. It was the duty of the Tenure Commission to review the board's findings de novo.

Ferrario alleged before the Tenure Commission that the board had "become partial," given "the appearance of partiality" or "raised the spectre of bias." We agree with Ferrario that he does not

have to show actual bias to show a violation of his due process rights. Indeed, Ferrario has failed to establish actual bias on the part of any individual board member or the board as a whole. However, an appearance of bias or partiality does not meet the standard of *Withrow* and *Crampton.*

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. [*Withrow, supra,* p 47.]

Ferrario must show that the risk of unfairness was intolerably high or that the probability of unfairness is too high to be constitutionally tolerable. *Crampton, supra,* p 358. As noted earlier, the board minutes may have raised a question of bias on the part of the board. However, an examination of the full procedures used at the hearing fails to substantiate Ferrario's claims.[29] Moreover, had the commission conducted a de novo review on the merits, it would have discovered that Ferrario admitted almost every one of the complainant's serious allegations. If the board's decision had gone against the great weight of the evidence, Ferrario's claims of bias would have been substantiated. Such was not the case.

[29] Virtually every case cited by plaintiff to support his claim of lack of due process involved no hearing prior to dismissal.

## V. REMEDIES

### A. BACK PAY

The teacher tenure act provides that a teacher may be suspended with pay until the board reaches a decision. If the Tenure Commission reverses the board's decision, the teacher shall be entitled to all salary lost.[30]

In *Shiffer v Gibraltar Schools, supra,* 208-209, this Court held that a determination of back pay should be deferred during the pendency of teacher tenure controversies.

> The objective of an expeditious administrative resolution of tenure controversies can be accomplished by having the Tenure Commission similarly defer determination of back pay until after completion of the liability phase. There is no need to jettison the sound principles of mitigation of loss generally applied by courts and administrative tribunals throughout the land.
>
> Deferring determination of the amount of a back-pay award will facilitate resolution of the liability phase by freeing the commission from consideration of interlocutory evidence on the back-pay issue. An effort by the Tenure Commission to determine back-pay before a definitive ruling on liability will often be premature. If the school district appeals from the Tenure Commission's decision and does not reinstate the discharged teacher during the pendency of the appeal, the teacher's employment status and oppor-

---

[30] On the filing of charges in accordance with this section, the controlling board may suspend the accused teacher from active performance of duty until a decision is rendered by the controlling board, but the teacher's salary shall continue during such suspension: Provided, That if the decision of the controlling board is appealed and the tenure commission reverses the decision of the controlling board, the teacher shall be entitled to all salary lost as a result of such suspension. [MCL 38.103; MSA 15.2003.]

tunities will often change during the lengthy appeal process.

Deferral of the back-pay question will, avoiding piecemeal litigation, allow that question to be expeditiously resolved at one time with all the necessary evidence, hopefully informally and without further adjudication but, in all events, with the least expenditure of the Commission's resources.

In *Pounder v Harper Woods Bd of Ed,* 402 Mich 91; 260 NW2d 287 (1977), this Court interpreted MCL 38.103; MSA 15.2003:

> A teacher is entitled to salary during the period of suspension, but the suspension ends when the school board renders a decision. The statute does not address the question whether salary must be paid during the pendency of appeals from board or commission rulings.
>
> We do not impute to the Legislature an intent to award salary to a teacher who has not yet prevailed on the merits and whose discharge was vacated on procedural grounds, subject to correction on remand without a rehearing. Under such a construction of the statute, interlocutory rulings on procedural errors would result in windfalls to teachers who later lose on the merits. Teachers who prevail on the merits are entitled to no more than the actual economic loss suffered. *Shiffer v Board of Education of Gibraltar School District,* 393 Mich 190; 224 NW2d 255 (1974). The awarding of salary to a teacher who has not yet prevailed on the merits and whose discharge was reversed on procedural grounds is at odds with the rule of compensation for actual loss suffered. Moreover, the practice of awarding salary at this stage conflicts with the policy of deferring determination of the amount of back pay until after there has been a definitive ruling on liability. See *Shiffer v Gibraltar Schools, supra,* 207-209. [*Id.,* 93-94.]

Ferrario alleges that the board's error in the

present case is not correctable on remand to the board as in *Pounder* and, therefore, he is entitled to back pay. Ferrario looks to this Court's decision in *Wilson v Flint Bd of Ed,* 361 Mich 691; 106 NW2d 136 (1960). In *Wilson,* the Flint School District required three years of tenure as opposed to the two-year period required by statute. Plaintiff Wilson was given no evaluations of her teaching performance for three years. The board failed to follow any of the procedures established by the teacher tenure act, including presentation of definite written charges, an opportunity for a full hearing with a stenographer, and an opportunity to cross-examine witnesses against her.

The commission concluded that the teacher was entitled to back pay for the period between the improper hearing and the conclusion of the proper hearing before the board. This Court approved the remand to the school board to conduct a proper hearing on the merits, but did not discuss the issue of back pay. *Wilson, supra,* p 697.

The present case can be distinguished from *Wilson.* Here there was ample evidence of the board's attempt to protect Ferrario's due process rights and to comply with the teacher tenure act. Moreover, Ferrario, unlike Wilson, had a complete hearing on the merits before the board which has never been reviewed by the Tenure Commission or any court. In fact, the Tenure Commission foreclosed its review of the school board's findings on the merits by granting summary judgment to Ferrario. Without any determination on the merits, the commission ordered both reinstatement and back pay.

This Court recognizes that the Tenure Commission may reverse a board decision on the basis of procedural error alone. However, the truth or falsity of the allegations against the teacher is

relevant in the fashioning of a remedy.[31] Both the circuit court and the Court of Appeals recognized this in denying plaintiff reinstatement until such time as the commission completed a de novo hearing on the merits. If the board were biased, a remand to the board for a new hearing would not protect Ferrario's due process rights. On the other hand, if Ferrario were guilty of the misconduct charged, summary judgment for Ferrario with reinstatement and back pay would fail to protect the school district's legitimate concerns.

The Court of Appeals held that Ferrario was entitled to unconditional back pay where he alleged that, absent improper bias, the school board may never have decided to proceed with the charges. The serious nature of the allegations in the present case make it highly improbable that the school board would not have proceeded with a hearing upon an initial determination that there was a basis in fact for the student's allegations. However, according to the Court of Appeals, plaintiff does not have to show that the school district would not have proceeded with the charges, i.e., he does not have to establish that there was no basis in fact for the charges or no merit in the administration's case, he only needs to *allege* that charges would not have been brought. With this conclusion, we disagree.

A plaintiff need only claim that charges would never have been brought absent bias and, no matter how spurious that claim, the plaintiff would be entitled to compensation from the school district. We disagree with plaintiff's contention that back pay in such situations is an equitable remedy.[32]

---

[31] *McGhee v Draper,* 639 F2d 639 (CA 10, 1981).

[32] *Thomas v Ward,* 529 F2d 916, 920 (CA 4, 1975).

Back pay in Michigan is a statutory remedy provided by the teacher tenure act.

In *City of Ann Arbor v United States Dep't of Labor,* 733 F2d 429 (CA 6, 1984), an award of back pay to an employee, fired without a prior informal hearing, was reversed. The hearing referee who initially heard the case specifically refused to consider whether the employee would have been properly discharged for cause even if all of the procedures and regulations had been followed.[33]

The Sixth Circuit Court of Appeals concluded that an award of back pay based on procedural error where a plaintiff's discharge was for cause did not further the statutory purposes of the federal program involved nor serve as a proper remedy.

In *Kentucky v Donovan,* 704 F2d 288 (CA 6, 1983), the court noted:

"[B]ack pay, in many circumstances, will further the purposes of the Act. An award of back pay is the traditional 'make whole' remedy for wrongful discharge. Where it has not furthered the purposes of CETA, as when the discharge is proper but the procedure is technically deficient, courts have been reluctant to allow such a remedy. The rationale for disallowing back pay in these cases is that it does not further the purposes of the CETA program.

"Yet, in cases not involving technical defects . . . no court has found that back pay

---

[33] At the time of the employee's firing, there were mandatory procedures for resolving disputes between prime sponsors in the Comprehensive Employment and Training Act (29 USC 801 *et seq.*) program and employees hired under it. 29 CFR 98.26 (1975), removed June 28, 1985. *City of Ann Arbor v United States Dep't of Labor, supra,* 430, n 2.

awards are inconsistent with the purpose of the Act."

\* \* \*

It is unclear to us how a complainant who was properly discharged in a procedurally imperfect way is made whole by the payment of a year's wages for which he did not work. There is little logical correlation between the award and the loss. The payment of back pay here would be a windfall, not a make-whole compensation. [*Ann Arbor, supra,* 432.]

So too here, an award of back pay based on procedural error where a plaintiff's discharge was for cause does not further the statutory purpose of the teacher tenure act. Until the Tenure Commission determines the merits of Ferrario's case, it cannot be argued that he will be made whole by an award of back wages for which he has not worked. If Ferrario was discharged for just and reasonable cause, he has not suffered any unjust economic loss. By ordering reinstatement of Ferrario with full back pay, the commission is penalizing the school district for its own failure to conduct a de novo review on the merits. The school district should not be forced to pay Ferrario before its liability for his back pay is finally established. *Shiffer, supra.*

We believe that *Shiffer* and *Pounder, supra,* properly state the opinion of this Court. A final determination of the award and amount of back pay should take place after all appeals have been completed. Until a teacher has prevailed on the merits, the teacher has not established actual economic loss.

### B. REINSTATEMENT

Although Ferrario's death has made the issue of reinstatement moot, we believe it is necessary to consider the commission's order of reinstatement. In *Davis v River Rouge Bd of Ed,* 406 Mich 486, 490; 280 NW2d 453 (1979), this Court reviewed an order of reinstatement made without consideration of the merits by the Tenure Commission. The procedural defect involved was the late delivery of the hearing transcript by the school board.

> In this situation the State Tenure Commission has consistently ordered reinstatement of the teacher, without regard to the merits of the appeal. We acknowledge that the construction placed upon a statute by the agency legislatively chosen to administer it is entitled to great weight. *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513, 519; 158 NW2d 473 (1968). However, we disagree with the commission's construction in this instance. We do not believe the Legislature intended to provide for automatic reinstatement of a teacher who may be unfit and who has not been prejudiced by the delay in furnishing a transcript.

The Court in *Davis* found that tolling the period of the appeal would better protect the teacher's rights. Ferrario, unlike the plaintiff in *Davis,* has alleged prejudice as a result of the board's bias. However, we do not believe that the Legislature intended to provide for reinstatement of a teacher who may be unfit without a de novo review of the record on the merits by the Tenure Commission even when the teacher claims prejudice by the board's actions.

The Tenure Commission has a statutory duty to conduct a de novo review on the merits in order to determine if reasonable and just cause existed for the teacher's dismissal. This review protects the teacher from the dangers inherent in an "often subjective determination of a teacher's competency" made by a local school board. *Detroit Bd of Ed v Parks,* 417 Mich 268, 282; 335 NW2d 641 (1983).

Where there has been a hearing on the merits by the school board and the Tenure Commission has found a procedural or due process error that cannot be corrected on remand to the board, the commission should not order reinstatement before fulfilling its statutory duty of de novo review on the merits. If there has been no hearing on the merits by the board and the Tenure Commission has concluded that the teacher cannot receive a hearing that comports with due process by the board, the Tenure Commission shall conduct a hearing on the merits before determining if reinstatement is a proper remedy. Until a decision on the merits is reached by the commission, the commission shall not order reinstatement of the teacher.

### VI. CONCLUSION

We reverse the decision of the Court of Appeals and remand this case to the State Tenure Commission for a de novo review on the merits consistent with this opinion. Should plaintiff Ferrario prevail on the merits, the commission shall award him back pay in accordance with *Shiffer v Gibraltar, supra.*

WILLIAMS, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, and ARCHER, JJ., concurred with CAVANAGH, J.