REHBERG v. BOARD OF EDUCATION OF MELVINDALE,
ECORSE TOWNSHIP SCHOOL DISTRICT NO. 11.

1. SCHOOLS AND SCHOOL DISTRICTS—DISMISSAL OF TEACHER—HEARING—FINDING OF STATE TENURE COMMISSION—EVIDENCE.

Finding of State tenure commission that plaintiff teacher had not had a fair hearing by the controlling school board at time of his dismissal while operating under the State teachers' tenure act *held*, supported by competent evidence, where it appears that notwithstanding previous notice that he would have from 75 to 100 witnesses, the hearing was held in a 12' x 24' room with seating accommodations for only 24 people besides the board and stenographer and all of plaintiff's witnesses, except himself, his wife, his attorney and 1 witness, were excluded by 2 armed policemen and a request to adjourn the meeting to more adequate available quarters was denied by the board (CL 1948, § 38.104).

2. SAME—POWERS OF STATE TENURE COMMISSION—REVIEW OF TEACHER'S DISMISSAL—EVIDENCE.

The State tenure commission, not only has been accorded the right to review the action taken by a controlling board in the matter of dismissal of a teacher, where the district is subject to the State teachers' tenure act, but may take additional testimony under its power to subpoena witnesses and then make an independent finding of facts thereon (CL 1948, §§ 38.104, 38.121, 38.139).

3. APPEAL AND ERROR—STATE TENURE COMMISSION—REVIEW BY SUPREME COURT.

The Supreme Court reviews the record taken by the State tenure commission to determine whether or not there is competent evidence to support the finding made, and does not consider the case *de novo* on appeal from such commission.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 47 Am Jur, Schools § 127 *et seq.*
[3] 47 Am Jur, Schools § 141 *et seq.*
[4] 47 Am Jur, Schools § 139.

4. SCHOOLS AND SCHOOL DISTRICTS—DISMISSAL OF TEACHER—STATE TENURE COMMISSION—EVIDENCE.

    Finding of fact by State tenure commission, based on record made by controlling board of education as well as additional testimony before the commission itself, that defendant board had not accorded plaintiff teacher a fair hearing before dismissing him, had improperly dismissed him and ordering the board to reinstate him *held*, supported by competent evidence (CL 1948, §§ 38.104, 38.121, 38.139).

5. COSTS—CONSTRUCTION OF STATUTES.

    No costs are allowed on school board's appeal from decision of State tenure commission in the matter of the dismissal of a teacher, where the construction of a statute is involved (CL 1948, §§ 38.104, 38.121, 38.139).

Appeal from State Tenure Commission. Submitted April 12, 1956. (Docket No. 3, Calendar No. 46,037.) Decided May 14, 1956. Rehearing denied June 28, 1956.

Petition to State Tenure Commission by Clark Rehberg to review finding of Board of Education of Melvindale, Ecorse Township School District No. 11, Wayne County, Michigan, of misconduct in his employment and discharge therefrom. Order holding discharge wrongful and restoring plaintiff to his teaching position. Defendant appeals. Affirmed.

*Edward N. Barnard,* for plaintiff.

*Vincent Fordell* (*Roscoe O. Bonisteel* and *Roscoe O. Bonisteel, Jr.,* of counsel), for defendant.

SHARPE, J. Ecorse Township School District No. 11 of Wayne county is a graded school district and operates under the State teachers' tenure act (CL 1948, §§ 38.71–38.191 [Stat Ann 1953 Rev §§ 15.1971–15.2056]). On or about March 3, 1947, the principal of Melvindale High School of that district sent a letter to the superintendent of schools stating that plaintiff, Clark Rehberg, had been guilty of im-

proper conduct in connection with certain girls in his classes.   On March 4, 1947, the superintendent sent a letter to the board of education recommending the suspension of Clark Rehberg until a decision was rendered by the board.   Following the receipt of this letter the board of education took steps to file charges and concur in the suspension of Clark Rehberg on the charges.   Plaintiff appealed to the State tenure commission, and on the hearing a copy of the transcript of testimony taken before the school board was offered in evidence.   The commission rejected this offer of evidence and announced that the parties would have a *de novo* hearing.   Upon review we held (see *Rehberg v. Board of Education of Melvindale, Ecorse Township School District No. 11*, 330 Mich 541, 546, 548), that:

"The teachers' tenure act specifies how the hearing shall be conducted before the controlling board.   See section 4 of article 4 (CL 1948, § 38.104 [Stat Ann 1949 Cum Supp § 15.2004]).   Testimony under oath or affirmation is required.   Section 1 of article 6 provides that hearings before the commission shall be conducted in the same manner, and in accordance with 'such other rules and regulations as the tenure commission may adopt.'   *   *   *

"The tenure commission should review and consider the record made before the controlling board, but is not precluded from taking such additional testimony as in its discretion may be required."

The above cause was remanded to the State tenure commission for further proceedings.

On August 19, 1953, the State tenure commission held a meeting, at which time evidence was introduced in behalf of Clark Rehberg relating to the size of the room in which the original meeting was held and the exclusion of witnesses during the time that testimony was being taken.   Testimony of other witnesses was offered and received relative to the char-

acter, ability, and attitude towards teaching of Clark Rehberg.

The State tenure commission entered an order reversing the order of the school board and restored Clark Rehberg to his position as a teacher of Melvindale High School and directed that he be paid any salary lost by reason of such suspension. In an opinion filed the State tenure commission stated:

"This commission found, as did the Supreme Court in the case on appeal, that counsel for teacher Rehberg had duly requested a public hearing as permitted by statute, and advised the board of education that Rehberg's witnesses and friends would number about 100, and pointed out to the board that adequate facilities for the hearing should be provided, all prior to the hearing which was held on April 10, 1947. A number of witnesses testified before this commission as to the manner of conducting the said hearing, and it convincingly appears that the hearing was held in a small meeting room of the Melvindale board of education in the basement of the school building, which had only 24 seats besides the seating arrangement at the table where the school board sat and a small table for a stenographer. There was not a single seat left to be occupied by any of Rehberg's witnesses, or any of his friends or supporters, and this situation continued without remedy and unchanged until after the plaintiff's case had been entirely heard, and no seat was vacated by any witness, or any of the witness's friends or parents, after such witness had testified, and it was impossible for any witnesses for Rehberg, or any friends or supporters of Rehberg to gain entrance to the room in time to hear any of the testimony offered by the plaintiff's witnesses, and Rehberg's witnesses and friends were excluded until after 11 o'clock at night. They could not hear any of the proceedings incident to presentation of testimony in support of the charges against Rehberg, and only Rehberg himself, his wife, his attorney, and the president of the State

Federation of Teachers were permitted to hear the plaintiff's side of the case.

"It is the opinion of the tenure commission that the hearing held before the controlling board on April 10, 1947, was not a proper public hearing and the rights of Rehberg to such a hearing as provided by the statute were not respected and provided for.

*  *  *

"Counsel for Rehberg vigorously objected to the sufficiency of the charges made against Rehberg, and the tenure commission was impressed by the fact that Rehberg was not charged with lack of education, lack of knowledge, lack of experience, lack of intelligence and thoroughness in his teaching methods or neglect of his work. He was not charged with any immoral act, or any improper proposals or suggestions tinged with any indication of any immoral or improper conduct on his part, or anything which might be construed as influencing improper conduct on the part of any pupil. At the hearing held on August 19, 1953, three former pupils of Rehberg testified more fully than they had done at the hearing in 1947 before the controlling board, and these 3 pupils were honor students in Melvindale High School, and they are now considerably older than they were when they gave their former testimony, and have since married and have children of their own. These former students had attended some of the same classes taught by Mr. Rehberg, which were attended by some of the girls who gave their testimony in support of the charges against Rehberg, and these 3 former pupils who testified on August 19th attended classes regularly, and had to have exceptional attendance records in order to be honor students. They all testified that they were at all times in position to see what happened in Rehberg's classes. They fully explained that Mr. Rehberg followed the practice of assigning homework or problems for his pupils to do, and that during the hour of each recitation period the students would be seated at small desks which were low in height, such as

is usual for a student's desk, and that Mr. Rehberg
followed the practice of working out sample problems
on the blackboard, and then calling upon individual
students to go to the blackboard and work out similar
problems before the class. The students were also
called upon to give oral recitations, and Mr. Rehberg
followed the practice of going to the individual stu-
dents' desks inspecting their work and the students'
efforts to perform the lesson assignment. That in
observing such work it was necessary for a full
grown man to bend over and lean over to see the writ-
ing, and upon some occasions it was unavoidable
that he place his hand on the back of the seat and
perhaps on a pupil's shoulder. He also at times
placed his hand on the shoulder or back of a student,
either male or female, as a gesture of encouragement
to get the student started toward the blackboard to
work out a problem. These former pupils all tes-
tified that they regarded Mr. Rehberg as a fine
teacher, who had a friendly and encouraging, and
somewhat fatherly attitude toward his students, and
whom they had never seen do anything improper, or
heard say anything improper to any of his students,
and had never witnessed any of the things which wit-
nesses against Rehberg testified to.  *   *   *

"The commission was impressed by the character
witnesses who appeared on behalf of Rehberg, all
of whom showed long acquaintance and intimate ac-
quaintance with Mr. Rehberg and his family, and who
pictured him as a happily married man with 4 chil-
dren and a man of sterling character and untar-
nished reputation for truthfulness and veracity, for
being a peaceful and law-abiding citizen in the com-
munity in which he lives. He gave his testimony be-
fore the controlling board. Mr. Rehberg was asked
about the charges against him and specifically denied
each of them and explained the circumstances, and
his view as to his duties as a teacher and his methods
and negatived all false impressions that might have
been created."

The school board appeals and urges that Clark Rehberg was given an adequate hearing on the charges heard by the school board. There is evidence from which it can be found that prior to the first hearing the school board was notified that Clark Rehberg would have approximately 100 friends and witnesses present when the hearing was had; that on the night in question the hearing was held in a room approximately 12 by 24 feet; that only friends and witnesses of the school board were allowed in the room, with the exception of Clark Rehberg and wife, his attorney, and 1 witness; that from 75 to 100 people were kept out of the rooms by 2 armed policemen; that requests were made to adjourn the meeting to the library in the same school where adequate seating facilities could be had for all interested parties, but this request was refused by the school board.

It should be noted that the issue of whether Clark Rehberg had a fair hearing before the school board does not in any way control the issue of whether or not he should have been discharged as a teacher. This issue should be passed upon by the State tenure commission, which found as a fact that Clark Rehberg had not been accorded a fair and impartial hearing. In our examination of the record we find that there was substantial and competent evidence to support its finding of fact, and we affirm its decision on that issue.

We also note that in the second hearing before the State tenure commission testimony of the character of Clark Rehberg was offered by persons who had intimately known Clark Rehberg. The commission reviewed the testimony offered at the second hearing, as well as the testimony offered before the board of education, and concluded that Clark Rehberg was not discharged for reasonable and just cause. It should be noted that evidence taken at the second

hearing was not presented to or passed upon by the school board.

PA 1937 (Ex Sess), No 4 provides under section 4 of article 4 the manner of conducting a hearing before the school board, and reads as follows:

"The hearing shall be conducted in accordance with the following provisions:

"a. The hearing shall be public or private at the option of the teacher affected.

"b. No action shall be taken resulting in the demotion or dismissal of a teacher except by a majority vote of the members of the controlling board.

"c. Both the teacher and the person filing charges may be represented by counsel.

"d. Testimony at hearings shall be on oath or affirmation.

"e. The controlling board shall employ a stenographer who shall make a full record of the proceedings of such hearing and who shall, within 10 days after the conclusion thereof, furnish the controlling board and the teacher affected thereby with a copy of the transcript of such record, which shall be certified to be complete and correct.

"f. Any hearing held for the dismissal or demotion of a teacher, as provided in this act, must be concluded by a decision in writing, within 15 days after the termination of the hearing. A copy of such decision shall be furnished the teacher affected within 5 days after the decision is rendered.

"g. The controlling board shall have the power to subpoena witnesses and documentary evidence, and shall do so on its own motion or at the request of the teacher against whom charges have been made. If any person shall refuse to appear and testify in answer to any subpoena issued by the controlling board, such controlling board may petition the circuit court of the county setting forth the facts which court shall thereupon issue its subpoena commanding such person to appear before the controlling board there to testify as to the matters being in-

quired into. Any failure to obey such order of the court may be punished by such court as contempt thereof." (CL 1948, § 38.104 [Stat Ann 1953 Rev § 15.2004].)

The act also provides for the right of appeal on behalf of a teacher from the decision of the school board, and reads:

"A teacher shall have the right to appeal any decision of a controlling board under this act within 30 days from the date of such decision, to a State tenure commission. The State tenure commission shall provide for a hearing to be held within 60 days from the date of appeal. Notice of the hearing before the State tenure commission and the conduct thereof shall be the same as provided in article 4, section 4, of this act, and in such other rules and regulations as the tenure commission may adopt." (CL 1948, § 38.121 [Stat Ann 1953 Rev § 15.2021].)

The act also provides for the duties of the State tenure commission in the event of an appeal, and reads:

"The State tenure commission shall act as a board of review for all cases appealed from the decision of a controlling board." (CL 1948, § 38.139 [Stat Ann 1953 Rev § 15.2039].)

It is urged by the school board that the State tenure commission has only power to act as a board of review to determine whether or not the school board carried out rights granted under the tenure act, and that the act in question does not give the State tenure commission the right to make findings of fact and thereby substitute its opinion for that of the board of education. We note that under CL 1948, § 38.121 (Stat Ann 1953 Rev § 15.2021) a teacher has the right to appeal from the action of the school board, and that the conduct of the appeal before the commission shall be the same as provided in article 4, § 4, of the

act. Under article 4, § 4, of the act the school board has the power to subpoena witnesses on its own motion or at the request of the teacher against whom charges have been made. We conclude that under article 4, § 4, of the act, the commission has the right to subpoena witnesses. And, if they have the right to subpoena witnesses, they have the right to hear the evidence. We see no purpose in the power of the commission to take further testimony if they cannot consider it upon the issues involved. We also conclude that the commission, after hearing the new testimony together with the testimony presented to the school board, may make an independent finding of facts, opinionate upon the same, and enter an order accordingly.

The act does not provide that upon appeal to the Supreme Court the record shall be considered *de novo*. We conclude that upon appeal to the Supreme Court, we review the record taken before the commission and determine whether there is competent evidence to support the findings of fact made by the commission. It would not be of any value to recite in detail the evidence given before the commission. It is sufficient to hold that there was competent evidence to support their finding of facts, and we affirm such action. In this case we do not pass upon the right of the commission to make an independent finding of facts where the commission had only the record made before the school board.

The order of the commission is affirmed, but without costs as the construction of a statute is involved.

DETHMERS, C. J., and SMITH, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.

The late Justice REID took no part in the decision of this case.