LAKESHORE BOARD OF EDUCATION v GRINDSTAFF
(AFTER SECOND REMAND)

Docket No. 83358. Argued November 8, 1989 (Calendar No. 6). Decided September 25, 1990.

John Grindstaff, a tenured teacher, was discharged by the Lakeshore Public Schools Board of Education following a hearing by the board. The State Tenure Commission reduced the discipline to suspension without pay for one semester. The Macomb Circuit Court, Raymond R. Cashen, J., affirmed. The Court of Appeals, BEASLEY, P.J., and MICHAEL J. KELLY and SHEPHERD, JJ., denied leave to appeal (Docket No. 91822). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 428 Mich 863 (1987). On remand, the Court of Appeals, HOOD, P.J., and SAWYER and T. E. JACKSON, JJ., in an unpublished opinion per curiam, reversed and reinstated the decision of the board (Docket No. 98748). The Supreme Court again remanded the case to the Court of Appeals for a determination of whether the commission has the authority to reduce a discharge to a suspension where it concludes that the board's finding of misconduct was proven. 431 Mich 904 (1988). On second remand, the same panel of the Court of Appeals, found that the teacher tenure act did not so authorize the commission, and that the commission's role is limited to determining whether a dismissal was arbitrary or unreasonable. The respondent appeals.

In an opinion by Justice LEVIN, joined by Justices CAVANAGH, BOYLE, and ARCHER, the Supreme Court *held:*

The State Tenure Commission may reduce a discipline of a tenured teacher imposed by a school board from discharge to suspension where it finds that the charged misconduct, while proven, was not reasonable and just cause for discharge.

1. An appeal to the State Tenure Commission operates to subject all questions of fact and law decided by the school board to review and determination de novo by the commission. Upon

REFERENCES

Am Jur 2d, Schools § 204.

See the Index to Annotations under Teachers and Instructors; Tenure.

such review, the commission has the duty, as well as the authority, to determine anew and as original questions all issues of fact and law, even though the issues previously were decided by the board, and to make an independent finding of facts, render an opinion, and enter an order.

2. Although the act does not literally provide that the Tenure Commission, empowered, by judicial construction, to determine anew and as original questions all issues of fact and law, even though such issues of fact and law were previously decided by the controlling board, may reduce a discipline imposed by a controlling board, it would not be consistent with the purpose of the act to require reinstatement of a teacher with back pay without imposition of any discipline where the commission finds that the misconduct charged by the school board against the teacher was proven, but that the discipline, suspension or discharge imposed by the school board is excessive and, specifically, as in this case, there was not reasonable and just cause for discharge.

3. Once the Supreme Court decided that a decision of a school board to impose the discipline of discharge was subject to redetermination by the commission, it was in effect decided that the commission was empowered to substitute its judgment for that of the school board regarding the discipline to be imposed as an issue of law and fact.

4. Upon judicial review, there was competent evidence to support the commission's independent findings of fact and law that there was not reasonable and just cause for the imposition of discharge by the school board and for its conclusion that the record established reasonable and just cause for the imposition of a discipline of suspension for one semester and, apparently, no longer.

Reversed and remanded.

Chief Justice RILEY, joined by Justices GRIFFIN and BRICKLEY, dissenting, stated that the function of the State Tenure Commission in reviewing the discharge or discipline of a teacher is limited to determining whether the local school board's action was for reasonable and just cause as required by the teacher tenure act. The commission lacks the statutory authority to fashion its own sanctions for a teacher's misconduct.

Under the teacher tenure act, it is the local board that has the power to discharge or demote a teacher for reasonable and just cause. Whether to discharge or discipline a teacher for misconduct is a question neither of law nor of fact but one of policy for the local board. The act does not provide the commis-

sion full authority to modify a penalty imposed by a local board.

The commission may not decrease, increase, modify, or adjust a penalty imposed by a local school board, but is empowered only to order a teacher's reinstatement with back pay where it determines that the misconduct involved does not warrant the discipline imposed. In this case, in altering the penalty imposed by the board, the commission exceeded its statutory authority. Thus, its decision should be set aside and the case remanded to the commission for a determination of whether the plaintiff's discharge was for reasonable and just cause.

177 Mich App 225; 441 NW2d 777 (1989) reversed.

SCHOOLS — TENURE COMMISSION — TEACHER DISCIPLINE.

The State Tenure Commission may reduce a discipline of a tenured teacher imposed by a school board from discharge to suspension where it finds that the charged misconduct, while proven, was not reasonable and just cause for discharge (MCL 38.101 *et seq.*; MSA 15.2001 *et seq.*).

*Glime, Daoust & Wilds* (by *Gary W. Wilds*) for the appellee.

*Mark H. Cousens* for the appellant.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gerald F. Young,* Assistant Attorney General, for the State Tenure Commission.

*Linda L. Bruin* for the Michigan Association of School Boards.

*Levin, Levin, Garvett & Dill, P.C.* (by *Erwin B. Ellmann* and *Freya B. Weberman*), for the Michigan Education Association.

*Mark H. Cousens* for the Michigan Federation of Teachers.

AFTER SECOND REMAND

LEVIN, J. (*to reverse*). The questions presented are (1) whether the State Tenure Commission may reduce the discipline imposed by a school board from discharge to suspension where it finds that the misconduct charged by a school board against a tenured teacher, while proven, did not constitute reasonable and just cause for discharge, and (2) if so, whether the Court of Appeals erred in reversing the Tenure Commission's decision that there was not reasonable and just cause for discharge.

We conclude that the Tenure Commission is empowered to so reduce the discipline, and that its decisions that there was not reasonable and just cause for discharge and that an appropriate discipline was a six-month suspension were supported by the evidence and, accordingly, that the Court of Appeals erred in reversing the commission's decision in this case.

I

John Grindstaff, a tenured teacher, was discharged by the Lakeshore Public Schools Board of Education after a hearing held by the school board pursuant to the provisions of the teacher tenure act.[1] The Tenure Commission, on appeal, reduced the discipline from discharge to suspension without pay for one semester. The circuit court affirmed. The Court of Appeals denied the school board's application for leave to appeal. This Court remanded the case to the Court of Appeals for consideration as on leave granted.[2]

The Court of Appeals reversed and reinstated

[1] MCL 38.101 *et seq.*; MSA 15.2001 *et seq.*
[2] *Lakeshore Bd of Ed v Grindstaff,* 428 Mich 863 (1987).

the decision of the school board.[3] The Court said
that Grindstaff, "[d]espite being constantly repri-
manded, suspended twice and taking a one-year
leave of absence," was "still unable to reform his
conduct," that he continued to violate rules and
directives after he was "warned, on at least four
occasions, that future violations could result in his
dismissal," and that he was "repeatedly warned
and reprimanded for using physical force on stu-
dents, leaving his classes unsupervised for pro-
longed periods of time, and leaving the school
building during school hours without permission."

The school board had, said the Court of Appeals,
made "diligent efforts to reform" Grindstaff's be-
havior. The Court said that "a school board is
justified in dismissing an insubordinate teacher
who persistently refuses to abide by administrative
rules and directives." The Court said that the
Tenure Commission's decision to reduce the pen-
alty to a one-semester suspension was not sup-
ported by competent, material, and substantial
evidence. Another brief suspension was not, said
the Court, "warranted by the evidence," nor would
it be "an appropriate penalty in light" of
Grindstaff's conduct.

Once again, this Court remanded the case to the
Court of Appeals.[4] The order of remand stated that
the Court of Appeals should determine whether
the Tenure Commission has the authority, where
it concludes that a school board's finding of mis-
conduct was proven, to reduce to suspension a
discipline of discharge ordered by the school board.

The Court of Appeals on the second remand[5]

[3] *Lakeshore Bd of Ed v Grindstaff (On Remand),* unpublished opin-
ion per curiam of the Court of Appeals, decided March 11, 1988
(Docket No. 98748).

[4] *Lakeshore Bd of Ed v Grindstaff,* 431 Mich 904 (1988).

[5] *Lakeshore Bd of Ed v Grindstaff (On Second Remand),* 177 Mich
App 225; 441 NW2d 777 (1989).

found that the teacher tenure act does not authorize the Tenure Commission "to modify or reduce" a discipline from discharge to suspension and that the Tenure Commission erred in its construction of the act and in assuming such authority:

> In modifying respondent's dismissal the Tenure Commission took it upon itself to decide how best to discipline the teacher. There is no provision in the act which expressly or impliedly grants this power to the Tenure Commission. Its role was limited to determining if the dismissal was arbitrary or unreasonable. [*Lakeshore Bd of Ed v Grindstaff (On Second Remand)*, 177 Mich App 225, 228; 441 NW2d 777 (1989).]

II

There were four charges. The first concerned an incident on March 3, 1983, and the second an incident two weeks later on March 17. Grindstaff had left his class unattended on those dates. The third charge referred to earlier incidents for which Grindstaff had received written reprimands or warnings and two suspensions, the longest of which was for three days.[6] The fourth charge was insubordination and was based on the same allegations as the third charge.[7]

---

[6] Grindstaff was charged with repeated acts of disobedience and failure to abide by administrative directives, rules, regulations, and policies.

The incidents referred to were leaving the classroom unsupervised and without permission, leaving the school building during unauthorized times, and the use of physical force on students.

The incidents resulted in written reprimands or warnings and two suspensions. One suspension was for arranging to purchase milk at student prices, and one for leaving a classroom unattended and unsupervised without permission.

The Tenure Commission found that the third charge was sustained and that there was a pattern of unacceptable conduct.

[7] The Tenure Commission found that insubordination had been shown by a preponderance of the evidence in that Grindstaff wilfully

The first charge was that on March 3, 1983, Grindstaff had left his fourth-hour class for twenty to thirty minutes while his students took a test. Two students testified that other students were cheating during Grindstaff's absence. Grindstaff said he was in a nearby classroom working a crossword puzzle. The exam was subsequently thrown out. The Tenure Commission found that a rule or policy requiring the teacher's presence in the classroom and administrative permission to deviate from such rule to be reasonable, and that the evidence was sufficient to support the charge.

The second charge was that on March 17, 1983, Grindstaff had left his seventh-hour class unattended and unsupervised, without prior approval, for approximately fifteen minutes. Grindstaff testified that he left the classroom to seek out a student to confirm an appointment made at the request of the student's parents. The evidence was conflicting whether he was gone five or fifteen minutes. The Tenure Commission found that Grindstaff's reason for leaving was not compelling and that the charge was proven by a preponderance of the evidence.

The Tenure Commission, however, went on to find that the penalty of discharge imposed by the school board was inappropriate, and that there was not reasonable and just cause for discharge. The commission stated that while insubordination may constitute reasonable and just cause for discharge, insubordination does not automatically justify discharge in all cases. Grindstaff had shown himself to be a "true motivator" of students in his eighteen years of service. He had "demonstrated outstanding skills as an educator." His was "the

disobeyed administrative directives and policies despite a full understanding of them.

classic case of a good teacher, but a poor employee."

Grindstaff had been suspended on two other occasions, the longest suspension was for three days. "Bearing in mind the concept of progressive discipline, as well as the nature of his March 1983, offenses—the only new misconduct which precipitated the instant case," the commission found that a "lengthy suspension" would serve as an adequate deterrent to Grindstaff and others, and concluded that the record "established reasonable and just cause" for a suspension without pay for the first semester of the school year.[8]

---

[8] The commission said:

While we have held insubordination may constitute just and reasonable cause for discharge, a finding of insubordination does not automatically justify discharge in all cases. In this case, there is no question that appellant has a history of disciplinary actions. However, we are very much aware of his nearly twenty years service to the district, and the evidence presented reflecting that, during that time, appellant demonstrated outstanding skills as an educator. He has gained respect of students and has shown himself to be a true motivator. We also find, however, that appellant has used poor judgment and has been insubordinate. Thus, appellant presents the classic case of a good teacher, but a poor employee.

This Commission recognizes that stern discipline is required to insure future compliance with rules and policies if the board is to exercise its duty to properly operate the district. Further, we find it crucial to protect against poor morale among students and staff which results when a tenured teacher is permitted to engage in misconduct with the misconception that any discipline will always fall short of discharge. Yet, we cannot ignore the lengthy and positive teaching contribution appellant has made. Therefore, while it is clear that a serious penalty is appropriate here, we find discharge is simply too severe for the conduct of this particular teacher. Appellant has been suspended on two other occasions. The longest suspension was for three days. Bearing in mind the concept of progressive discipline, as well as the nature of his March 1983, offenses—the only new misconduct which precipitated the instant case—we find that suspension without pay for a period of one semester is reasonable punishment under the circumstances. Further, such a lengthy suspension serves as an adequate deterrent to others who would consider engaging in such misconduct. *We find,*

### III

The tenure act provides that after satisfactory completion of the probationary period, a teacher shall acquire tenure and "shall not be dismissed or demoted except as specified" in the act:[9]

—A tenured teacher may be "discharge[d] or demot[ed]" only "for reasonable and just cause . . . ."[10]

—A tenured teacher may appeal "any decision" of a school board to the state tenure commission.[11]

—The Tenure Commission is "vested with such

---

*therefore, that the record has established reasonable and just cause for suspension without pay through the completion of the first semester of the 1983-84 school year. Therefore, we conclude that the penalty of discharge must be modified accordingly. [Emphasis added.]*

[9] After the satisfactory completion of the probationary period, a teacher shall be employed continuously by the controlling board under which the probationary period has been completed, and shall not be dismissed or demoted except as specified in this act. [MCL 38.91; MSA 15.1991.]

[10] Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause, and only after such charges, notice, hearing, and determination thereof, as are hereinafter provided. [MCL 38.101; MSA 15.2001.]

[11] A teacher who has achieved tenure status may appeal any decision of a controlling board under this act within 30 days from the date of such decision, to a state tenure commission. The state tenure commission shall provide for a hearing to be held within 60 days from the date of appeal. Notice and conduct of such hearing shall be the same as provided in article 4, section 4 of this act, and in such other rules and regulations as the tenure commission may adopt. [MCL 38.121; MSA 15.2021.]

The teacher tenure act provides that "[a]ll charges against a teacher shall be made in writing, signed by the person making the same, and filed" with the controlling board; "The controlling board, if it decides to proceed upon such charges, shall furnish the teacher with a written statement of the charges . . . and shall, at the option of the teacher, provide for a hearing" within thirty to forty-five days after the filing of such charges. MCL 38.102; MSA 15.2002.

powers as are necessary to carry out and enforce the provisions of " the act.[12]

—The Tenure Commission shall "act as a board of review for all cases appealed" from a decision of a school board.[13]

### A

Grindstaff contends that the Tenure Commission has the authority to modify penalties imposed by a school board. He contends that the purpose of the act is to protect teachers' rights and prevent turnover in the teaching profession. That purpose is achieved by de novo review of decisions of local school boards. De novo review means and requires that the Tenure Commission determine any penalty to be imposed. The commission's decision was supported by the record. The Court of Appeals erred in reversing the Tenure Commission's decision.[14]

The school board contends that while the Ten-

---

Article 4, § 4 of the act provides that the hearing shall be public or private, at the option of the teacher; "[n]o action shall be taken resulting in the demotion or dismissal of a teacher except by a majority vote of the members of the controlling board" (MCL 38.104[b]; MSA 15.2004[b]); the teacher and the person filing charges may be represented by counsel; testimony shall be on oath or affirmation and a stenographic record shall be made; "[a]ny hearing held for the dismissal or demotion of a teacher" must be concluded by decision in writing rendered within fifteen days with a copy furnished to the teacher within five days after decision (MCL 38.104[f]; MSA 15.2004[f]); the controlling board shall have the power to subpoena witnesses and documentary evidence either on its own initiative or at the request of the teacher.

[12] The tenure commission is hereby vested with such powers as are necessary to carry out and enforce the provisions of this act. [MCL 38.137; MSA 15.2037.]

[13] The tenure commission shall act as a board of review for all cases appealed from the decision of a controlling board. [MCL 38.139(1); MSA 15.2039(1).]

[14] Teacher unions filed briefs amici curiae in support of Grindstaff asserting that the Tenure Commission has the responsibility to evalu-

ure Commission reviews the decision of a school board de novo, that power does not extend to the modification of discipline imposed by a school board. Absent a determination that there was a procedural irregularity or that the school board acted arbitrarily or capriciously in imposing discharge, the Tenure Commission must affirm a discharge decision where the charged misconduct is proven. Limitations must, the school board argues, be placed on the reviewing authority of the Tenure Commission to avoid unwarranted interference with local control of schools. Acceptance of the Tenure Commission's view of its de novo reviewing authority would reduce disciplinary proceedings before a school board to an idle ceremony.[15] The determination of the appropriate measure of discipline requires the exercise of discretion, and the decision of the school board must be given deference by the Tenure Commission.

The school board urges that where the punishment does not fit the crime, the Tenure Commission is empowered to reverse the decision of the school board and order reinstatement if reasonable and just cause has not been established or if the discipline was arbitrary, capricious or imposed in bad faith. The Tenure Commission's decision to reduce Grindstaff's discharge to a one-semester suspension was not supported under the facts established before the commission or by competent, material, and substantial evidence on the whole record.[16]

ate and determine the penalty for teacher misconduct, and that the Court of Appeals decision was incorrect.

The Attorney General filed a brief in behalf of the Tenure Commission contending that the Tenure Commission may reduce discipline from discharge to suspension where it finds that misconduct, albeit proven, did not constitute reasonable and just cause for discharge.

[15] See n 20 and the accompanying text.

[16] An amicus brief was filed by an association of school boards

B

In *Rehberg I*,[17] the teacher was removed by the school board. The Tenure Commission reversed. This Court reversed and remanded to the Tenure Commission for further proceedings, following which this Court again considered the matter in *Rehberg II*.[18]

In *Rehberg I*, the school board made an argument somewhat similar to the argument advanced by the school board in the instant case. This Court described the issue there presented as follows:

> The sole question presented here is whether the State tenure commission, acting as a "Board of Review," hears cases *de novo or only for the purpose of determining whether the original proceedings before the controlling board were proper*, without error, and in accordance with the provisions of the tenure act.[19] [Emphasis added.]

This Court responded that the tenure act provides a "safeguard upon the arbitrary or unreasonable dismissal of teachers and is designed for their protection. It does not, however, otherwise diminish or interfere with the administrative power of the local controlling board, nor require it to indulge in idle ceremonies."[20]

At the first Tenure Commission hearing in *Rehberg*, a copy of the transcript of testimony taken

stating that there is no authority in the teacher tenure act permitting the Tenure Commission to modify a discipline imposed by a school board where the Tenure Commission adopts or affirms the school board's determination that the teacher had engaged in misconduct.

[17] *Rehberg v Melvindale Bd of Ed*, 330 Mich 541; 48 NW2d 142 (1951).

[18] *Rehberg v Melvindale Bd of Ed*, 345 Mich 731; 77 NW2d 131 (1956).

[19] *Rehberg I*, p 542.

[20] *Id.*, p 548.

before the school board was offered in evidence. The Tenure Commission refused to receive it and announced that the parties would have a hearing de novo. This Court reversed the Tenure Commission in *Rehberg I* and remanded to the commission for further proceedings, stating that the commission should "review and consider the record made before the controlling board, but is not precluded from taking such additional testimony as in its discretion may be required."[21]

On remand from this Court, the Tenure Commission held a "meeting" at which additional testimony was taken. The commission entered an order reversing the order of the school board and restored the teacher to his former position. In *Rehberg II*, this Court said there was substantial and competent evidence to support the Tenure Commission's finding that the teacher did not have a fair hearing before the school board. At the second hearing before the Tenure Commission, testimony was offered in support of the teacher. The Tenure Commission "reviewed the testimony offered at the second hearing, as well as the testimony offered before the board of education, and concluded that Clark Rehberg was not discharged for reasonable and just cause."[22] The Court noted that the evidence taken at the second hearing was not presented to, or passed on, by the school board.

The school board in *Rehberg II* argued, again paralleling the argument advanced by the school board in the instant case, that the Tenure Commission "has only power to act as a board of review to determine whether or not the school board carried out rights granted under the tenure act, and that the act in question does not give the State tenure commission the right to make find-

[21] *Id.*

[22] *Rehberg II, supra,* p 737.

ings of fact and thereby *substitute its opinion* for that of the board of education."[23] This Court rejected the argument, stating that "the commission, after hearing the new testimony together with the testimony presented to the school board, may make an *independent finding of facts, opinionate upon the same, and enter an order accordingly.*"[24]

This Court added that the question on judicial review from the Tenure Commission was whether there was *"competent evidence to support the findings of fact made by the commission."*[25] It concluded that there was, and affirmed the action of the commission in reinstating the teacher.

In reaching its conclusion concerning the authority of the Tenure Commission, this Court relied on the provisions of the tenure act stating that the Tenure Commission shall act as a board of review, and that the conduct of an appeal before the commission shall be the same as provided in article 4, section 4,[26] including the power to subpoena witnesses. "We see no purpose in the power of the commission to take further testimony if they cannot consider it upon the issues involved."[27]

This Court reserved in *Rehberg II* the question whether the Tenure Commission had the power to make an independent finding of fact where the commission had only the record made before the school board. That question was resolved in *Long v Royal Oak Twp Bd of Ed,* 350 Mich 324, 327; 86 NW2d 275 (1957), where the Court responded in the affirmative to the question whether the Tenure Commission may, where evidence is produced before the school board to support its ruling, vary or

[23] *Rehberg II, supra,* p 739. (Emphasis added.)

[24] *Id.,* p 740. (Emphasis added.)

[25] *Id.* (Emphasis added.)

[26] See n 11.

[27] *Rehberg II, supra,* p 740.

reverse the finding of the school board without new material evidence being presented to the commission. The Court declared:

—It is ruled again, as in *Rehberg II,* that the commission "may make an independent finding of facts, opinionate upon the same, and enter an order accordingly."

—"[A]ll questions of fact" decided by a school board, as well as questions of law, are subject "to review and determination *de novo* by the commission."[28]

—The commission is vested with the "duty and authority to determine, *anew and as original questions, all issues of fact and law theretofore decided by the controlling board.*"[29] (Emphasis added.)

This Court has thus rejected arguments that the authority of the Tenure Commission is limited to a determination of whether the "proceedings" before the school board "were proper,"[30] and that the act does not empower the Tenure Commission to make

---

[28] See *Plymouth-Canton Community Schools v State Tenure Comm,* 435 Mich 76; 457 NW2d 656 (1990).

[29] We find no occasion for review of the evidence appellant discusses in its brief. It is ruled again, as in the second *Rehberg Case,* that the commission "may make an independent finding of facts, opinionate upon the same, and enter an order accordingly." . . . To this we will add that an appeal to the commission under said article 6 operates to subject *all questions of fact* decided by the controlling board, as well as requisite questions of law, *to review and determination de novo by the commission.*

Our stated view of the commission's administrative function stems particularly from language appearing in section 1 of said article 6, by which the commission is directed to conduct its hearing on appeal "the same as provided in article 4, section 4 of this act." Said section 1, considered with section 4 of article 4, discloses clear legislative intent that the commission—following appeal by a teacher under said article 6—be vested with duty and authority to determine, *anew and as original questions, all issues of fact and law theretofore decided by the controlling board. [Long, supra,* pp 326-327. Emphasis added.]

[30] *Rehberg I, supra,* p 542.

"findings of fact and thereby *substitute* its opinion
for that of the" school board even where additional
evidence was taken before the Tenure Commis-
sion,[31] and that the act does not so empower the
Tenure Commission to vary the findings of the
school board and make findings of fact and "substi-
tute" its opinion for that of the school board where
the only record was made before the school board
and no additional evidence was taken before the
Tenure Commission.[32]

In sum, although the act, a safeguard against
the "arbitrary *or* unreasonable"[33] dismissal of a
teacher, does not "otherwise diminish or interfere
with the administrative power of the local control-
ling board, nor require it to indulge in idle ceremo-
nies,"[34] an appeal to the commission operates to
subject "all questions of fact" and law decided by
the school board "to review and determination *de
novo*" by the Tenure Commission.[35] Upon such
review, the Tenure Commission has the "duty," as
well as the authority, to determine "anew and as
original questions" all issues of fact and law al-
though those issues were theretofore decided by
the school board,[36] and to "make an independent
finding of facts, opinionate upon the same, and
enter an order accordingly."[37] Upon judicial review
by this Court,[38] the question is whether there was

---

[31] *Rehberg II, supra,* p 739. (Emphasis added.)

[32] *Long, supra,* p 326.

[33] *Rehberg I, supra,* p 548. (Emphasis added.)

[34] *Id.*

[35] *Long, supra,* p 326.

[36] *Id.,* p 327.

[37] *Rehberg II,* p 740.

[38] And now that the Court of Appeals has been created, upon
judicial review by the Court of Appeals as well.

"competent evidence to support the findings of fact made by the commission."[39]

## IV

The tenure act does not, indeed, in terms provide that the Tenure Commission may take any action other than to decide whether the "dismissal" of a teacher was for "reasonable and just cause." It is thus possible to argue that where the commission finds that the misconduct charged by the school board against a tenured teacher, while proven, did not constitute reasonable and just cause for discharge, it must reinstate the teacher and that the commission is without power to substitute its judgment for that of the school board by imposing the lesser discipline of suspension for a period of time that in the judgment of the commission is supported by reasonable and just cause.

The argument ignores that the tenure act leaves much to construction, as numerous decisions of this Court attest.[40] The act does not, in terms, provide protection for, or an appeal to, the commission from a decision of a school board suspending rather than discharging a teacher. Read liter-

---

[39] *Rehberg II, supra,* p 740. We note that *Rehberg II* was decided before the adoption of Const 1963, art 6, § 28, providing for a determination on judicial review of whether an administrative ruling was "supported by competent, material and substantial evidence on the whole record." See *Beebee v Haslett Public Schools (After Remand),* 406 Mich 224, 227; 278 NW2d 37 (1979).

[40] See *Rehberg I, supra, Rehberg II, supra, Long, supra, Munro v Elk Rapids Schools (On Rehearing),* 385 Mich 618; 189 NW2d 224 (1971), *Weckerly v Mona Shores Bd of Ed,* 388 Mich 731; 202 NW2d 777 (1972), *Shiffer v Gibraltar School Dist Bd of Ed,* 393 Mich 190; 224 NW2d 255 (1974), *Ajluni v West Bloomfield School Dist Bd of Ed,* 397 Mich 462; 245 NW2d 49 (1976), *Dryden v Marcellus Community Schools Bd of Ed,* 401 Mich 76; 257 NW2d 79 (1977), *Lipka v Brown City Community Schools (On Rehearing),* 403 Mich 554; 271 NW2d 771 (1978), *Breuhan v Plymouth-Canton Community Schools,* 425 Mich 278; 389 NW2d 85 (1986), and *Belanger v Warren Consolidated School Dist Bd of Ed,* 432 Mich 575; 443 NW2d 372 (1989).

ally, there would be no appeal from a school board decision suspending a teacher for a day, a week, a semester, or a year. Nonetheless, the act has been construed, as a matter of practice,[41] to safeguard a tenured teacher against suspension except for reasonable and just cause and to provide for review of a suspension by the Tenure Commission. The act thus has been construed, although it does not literally provide therefor, to mean, in effect, that the commission shall determine whether there was reasonable and just cause for the imposition of the "discipline" imposed by the school board, whether the discipline imposed was suspension or discharge.

The commission, accordingly, is empowered to determine "anew and as an original question" whether the discipline, suspension or discharge, that was imposed was for reasonable and just cause. That construction clearly is required, although the act does not literally so provide in respect to the imposition of a discipline other than discharge.

Similarly, although the act does not literally provide that the Tenure Commission, empowered —by judicial construction—to determine "anew and as original questions" all issues of fact and law, although such issues of fact and law were "theretofore decided by the controlling board," may reduce a discipline imposed by a controlling board, we are of the opinion that it would not be consistent with the purpose of the act to require reinstatement of a teacher with back pay without imposition of any discipline where the commission finds that the misconduct charged by the school board against the teacher was proven, but that the discipline, suspension or discharge, imposed by the

---

[41] A suspension is deemed for purposes of Tenure Commission review to be a "demotion."

school board is excessive and, specifically, in the instant case, there was not reasonable and just cause for discharge.

Once this Court decided that a decision of a school board to impose the discipline of discharge was subject to redetermination by the Tenure Commission, empowered to determine "anew and as original questions, all issues of fact and law theretofore decided by the" school board, and that the redetermination was to be in respect to "all issues of fact and law," and that its "duty" on such redetermination required it to "make an independent finding of facts, opinionate upon the same, and enter an order accordingly," it was in effect decided that the Tenure Commission was empowered to "substitute" its judgment for that of the school board regarding the discipline[42] to be imposed as an issue of law and fact.[43]

V

. We are also persuaded that there was competent evidence to support the "independent"[44] finding of fact and law by the Tenure Commission that there was not reasonable and just cause for the imposition of the discipline of discharge by the school

[42] The school board is not empowered to appeal its own decision to the Tenure Commission. Only the teacher may appeal the school board's decision to the Tenure Commission. We therefore see no basis on which the Tenure Commission might impose a greater discipline than that imposed by the school board.

[43] Alternatively, the commission might remand to the school board for imposition of a lesser discipline for which, in the school board's judgment, there is reasonable and just cause, without specification or expression of opinion by the Tenure Commission of what lesser discipline would, on further appeal, be deemed to have been supported by reasonable and just cause. Such an alternative course might, however, unduly prolong the review process with successive redeterminations by the Tenure Commission and remand to the school board to try once again.

[44] *Rehberg II, supra,* p 740.

board in light of Grindstaff's lengthy service, his teaching and motivating skills, the history of prior discipline, two suspensions, none of which were for longer than three days, the current charges, both incurred in the same month, the nature of the charges, leaving the classes unattended, and its conclusion that the record established reasonable and just cause for the imposition of a discipline of suspension for one semester, and, apparently, no longer.

Reversed and remanded to the Tenure Commission for implementation of its order.

CAVANAGH, BOYLE, and ARCHER, JJ., concurred with LEVIN, J.

RILEY, C.J. (*dissenting*). The question before the Court is whether the State Tenure Commission has the authority to reduce or otherwise modify the penalty of discharge or other discipline imposed upon a teacher by a local school board. I would conclude that the function of the commission in reviewing the discharge or discipline of a teacher is limited to determining whether the local board's action was for "reasonable and just cause" as required by the teacher tenure act, MCL 38.101; MSA 15.2001, and that the commission lacks the statutory authority to fashion its own sanctions for a teacher's misconduct. However, rather than affirm the decision of the Court of Appeals, I would remand this matter to the Tenure Commission for a determination of whether the plaintiff's discharge in this case was for reasonable and just cause.

I

Whether the Tenure Commission has the authority to modify a penalty imposed by a local

board is a question of law, requiring interpretation of the commission's enabling legislation, the teacher tenure act, MCL 38.71 *et seq.*; MSA 15.1971 *et seq.* See Const 1963, art 6, § 28. While we must accord some deference to an administrative agency's interpretation of its own enabling act, particularly longstanding administrative precedent, *Southfield Police Officers Ass'n v Southfield,* 433 Mich 168, 176-177; 445 NW2d 98 (1989), ultimately it is this Court's duty to construe statutes and to determine the legislative intent underlying them. See *U of M Regents v Employment Relations Comm,* 389 Mich 96, 102-103; 204 NW2d 218 (1973). We are bound to set aside any decision of the commission that exceeds its statutory authority. MCL 24.306(1)(b); MSA 3.560(206)(1)(b).

We are not presented in this case with a well-settled construction of the tenure act by the commission or lower courts. In fact, just the opposite is true. The commission appears to have concluded only recently that it has the authority to reduce or otherwise modify the discipline received by a teacher following a board hearing. *Private Decision,* STC No. 82-69, decided in 1984, was the first time in the commission's nearly fifty-year history that it exercised that power. We must carefully examine the commission's change of direction in light of our constitutional and statutory duty to interpret the tenure act, and adopt its conclusions only if they represent a reasonable and defensible reading of the act. I am not convinced that they do.

II

There is, obviously, no express authority granted to the commission in the statute itself to reduce or otherwise modify a penalty imposed by a local board. The statute gives the local board the right

to discharge or demote[1] a teacher for "reasonable and just cause." MCL 38.101; MSA 15.2001. The teacher has the right to appeal the board's action to the commission, which conducts its own hearing on the matter, in the same manner as the local board. MCL 38.121; MSA 15.2021. On appeal, the commission acts as a "board of review," MCL 38.139; MSA 15.2039, and is vested with "such powers as are necessary to carry out and enforce the provisions" of the act. MCL 38.137; MSA 15.2037.

The plaintiff and the commission contend that this statutory scheme impliedly vests the commission with the authority to modify the decisions of a local board regarding the severity of the penalty imposed on a teacher. They rely on various decisions of this Court to establish that authority. In my view, such reliance is misplaced.

### A

This Court first discussed the extent of the commission's authority in reviewing the discharge or discipline of a teacher in *Rehberg v Melvindale Bd of Ed,* 330 Mich 541; 48 NW2d 142 (1951) (*Rehberg I*). In *Rehberg I,* the Court considered the question whether the commission, acting as a board of review, "hears cases *de novo* or only for the purpose of determining whether the original proceedings before the controlling board were proper, without error, and in accordance with the provisions of the tenure act." *Id.,* p 542. The plaintiff in *Rehberg I* objected to the school superintendent's

---

[1] The act defines "demote" to mean "to reduce compensation or to transfer to a position carrying a lower salary." MCL 38.74; MSA 15.1974. This definition is sufficiently broad, as Justice LEVIN points out (*ante,* p 356), to encompass certain discipline short of discharge, such as a temporary suspension without pay. In such cases, all of the protections of the act apply with the same force as in discharge cases.

introduction into evidence, before the commission, of the record made at the board level, contending that the proceeding before the commission was to be a review de novo. The commission agreed with the plaintiff and refused to consider the record, stating that it would arrive at a decision " 'from the testimony produced' " before it, not that before the local board. *Id.,* p 544.

On appeal, this Court held that the commission can, and indeed must, consider the record from the board hearing:

> The tenure act places an additional safeguard upon the arbitrary or unreasonable dismissal of teachers and is designed for their protection. It does not, however, otherwise diminish or interfere with the administrative power of the local controlling board, nor require it to indulge in idle ceremonies.
>
> The tenure commission should review and consider the record made before the controlling board, but is not precluded from taking such additional testimony as in its discretion may be required. [*Id.,* p 548.]

The Court then remanded the case to the commission for further proceedings consistent with its opinion.

Because the Court's opinion in *Rehberg I* did not answer the question of the scope of the commission's review authority in the same stark terms in which it had been posed, i.e., whether such review is de novo or deferential, the case returned to this Court after remand. *Rehberg v Melvindale Bd of Ed,* 345 Mich 731; 77 NW2d 131 (1956) (*Rehberg II*). The question on remand concerned the commission's "right to make findings of fact and thereby substitute its opinion for that of the board of education." *Id.,* p 739. In somewhat clearer

terms than in *Rehberg I,* the Court concluded that since the commission had the right, under MCL 38.121; MSA 15.2021, to subpoena witnesses and hear new evidence, it also had the right to consider that evidence upon the issue involved. Thus, "the commission, after hearing the new testimony together with the testimony presented to the school board, may make an independent finding of facts, opinionate upon the same, and enter an order accordingly." *Id.,* p 740. As in *Rehberg I,* however, the Court in *Rehberg II* failed to identify the commission's review of the local board's action as review de novo.

Shortly after *Rehberg II,* the Court decided *Long v Royal Oak Twp Bd of Ed,* 350 Mich 324, 326; 86 NW2d 275 (1957), attempting one last time to clear up any "misapprehension[s] of the statutory function of the commission . . . ." The Court held that "an appeal to the commission under . . . article 6 operates to subject all questions of fact decided by the controlling board, as well as all requisite questions of law, to review and determination de novo by the commission." As in *Rehberg II,* the Court in *Long* relied on the authority of the commission to conduct hearings in the same manner as the local board:

> Our stated view of the commission's administrative function stems particularly from language appearing in section 1 of said article 6, by which the commission is directed to conduct its hearing on appeal "the same as provided in article 4, section 4 of this act." Said section 1, considered with section 4 of article 4, discloses clear legislative intent that the commission—following appeal by a teacher under said article 6—be vested with duty and authority to determine, anew and as original questions, all issues of fact and law theretofore decided by the controlling board. [*Id.,* p 327.]

According to the commission and the plaintiff, the review de novo explained in *Long* and, to a lesser extent, the *Rehberg* cases necessarily encompasses a review of the penalty imposed, and provides the basis for the commission's right not only to determine whether the board's penalty is for reasonable and just cause, but also to independently impose a different penalty. I disagree.

B

None of these cases, or any of the statutory provisions upon which they rely, establishes the authority the commission seeks to assert. *Rehberg I* emphasizes the retention of local control over administrative matters, which certainly include the discharge and discipline of teachers. If anything, that case cautions against an overly broad reading of the commission's powers. As the Court stated in *Rehberg I,* the Legislature did not intend to "deprive local governing bodies of administrative control of teachers," and the act does not "otherwise diminish or interfere with the administrative power of the local controlling board . . . ." *Id.,* pp 547-548.[2]

*Rehberg II* lends no greater support to the commission's position. The Court's statement that the commission "may make an independent finding of facts, opinionate upon the same, and enter an order accordingly," *id.,* p 740, does not answer the question presented in this case, which concerns the *extent,* not the existence, of the commission's authority to render an opinion regarding the facts

---

[2] The Court also stated that "[s]chool districts, though State agencies, are governed locally and their controlling boards are chosen by the electorate. (See [1927 PA 319, 1948 CL 341.1 *et seq.* (MSA 15.1 *et seq.*)].) If the legislature intended to deprive local governing bodies of administrative control of teachers, that intent should have been definitely stated in the tenure act." *Id.,* pp 547-548.

and enter an order accordingly. In other words, *Rehberg II* does not resolve the question whether the commission's "opinionat[ing]" and "order[ing]" is limited to concluding that reasonable and just cause did not exist for a discharge or other discipline and consequently ordering that a teacher be reinstated or granted back pay, or whether it includes determining that a particular penalty other than that imposed by the local board is proper and then ordering it imposed.

*Long* similarly fails to resolve the question in this case. It recognizes the commission's "duty and authority to determine, anew and as original questions, all issues of fact and law theretofore decided by the controlling board." *Id.*, p 327. Whether to discharge or discipline a teacher for misconduct, however, is a question neither of law nor of fact; it is, essentially, a question of policy, one within the sole discretion of the locally governed school board. While the question whether the misconduct was in fact engaged in is one of fact, and the question whether there exists reasonable and just cause to impose a particular penalty for such misconduct is one of law, the decision to actually do so is a policy decision involving the consideration of factors in addition to reasonableness, such as the precedential effect of the kind of discipline imposed and its effect on the other teachers.[3] It is not inconceivable, for example, that a school board

[3] Other courts that have addressed the issue have concluded that the decision to impose any penalty is one of policy, not fact or law. For example, in *Clark v Central Kitsap School Dist,* 38 Wash App 560, 564-565; 686 P2d 514 (1984), the question was whether the trial court, which reviewed de novo the disciplinary decisions of the school district, had the authority to impose a lesser discipline once it found that sufficient cause existed for discharge. The appellate court concluded that it did not have such authority:

   Consequently, evidence in mitigation is not relevant and should not be admitted. *Once sufficient cause for discharge has been found, the question of whether discharge is appropriate is*

might decide that, if discharge is unreasonable, it would prefer some other alternative to an unpaid suspension, such as a demotion, a transfer, a prohibition from conducting particular extracurricular activities—or a host of other options involving considerations other than simply reasonableness and just cause. The point is, even if the commission determines that a one-semester suspension is justified under the circumstances, it remains a policy decision, uniquely suited to the board and for which the commission is not particularly qualified, whether to in fact impose that lesser penalty.[4]

The statutory provisions upon which the commission and the plaintiff rely likewise fail to support their position. MCL 38.139; MSA 15.2039 empowers the commission to sit only as a "board of review." Under *Long,* the commission's review of the penalty imposed by the local board, to determine whether it was for reasonable and just cause, is de novo. However, the mere fact that the commission has the authority to *review* the penalty imposed, to determine whether it is for rea-

*a policy decision.* That decision requires consideration of a number of factors such as the employee's work history, safety, effect on other employees, prior decisions and the precedential impact. *Such matters involve policy considerations within the exclusive purview of the board, not the trial court or jury. Neither judge nor jury is entitled to usurp the powers and authority of the duly elected board members once the board has satisfied the laws respecting discharge.* [Emphasis added.]

See also *MacKenzie v School Committee of Ipswich,* 342 Mass 612; 174 NE2d 657 (1961); *In re Fulcomer,* 93 NJ Super 404; 226 A2d 30 (1967) (Kolovsky, J., dissenting).

[4] The majority mentions an "alternative" construction of the act which would allow the commission to remand to the board to allow it to impose a lesser discipline. *Ante,* p 357, n 43. Although there is no provision in the act for such a "remand," I express no opinion as to the authority of the local board to impose a different penalty upon notification by the commission that the penalty originally imposed was not reasonable.

sonable and just cause, does not necessarily mean that it has the right to *alter* that penalty if it concludes otherwise. In altering the penalty, the commission goes beyond reviewing the decision of the local board and imposes a penalty of its own.

The premise of the commission's recent determination that it has the authority to modify the penalty imposed by the local board, and of the plaintiff's argument, is that the commission's review de novo must *necessarily* encompass the right to review the penalty, otherwise it is not a truly de novo review. Thus, in *Private Decision,* STC No. 82-69, October 5, 1984, p 8, the commission concluded that "where a tribunal is required to act de novo, deference to the initial decision-maker's determination regarding the severity of the penalty is error." The plaintiff contends that this is particularly true in teacher tenure cases, in light of the legislative purpose to " 'strip the school boards of their autocratic power and to prescribe for them rules of administrative action which would ensure a greater degree of security to their employees.' " *Wilson v Flint Bd of Ed,* 361 Mich 691, 694; 106 NW2d 136 (1960).

This argument flatly mischaracterizes the issue in this case. Not even the school district suggests that "deference" to the local board is either desirable or permissible. The Court of Appeals did *not* hold that the commission does not review the penalty imposed. The commission is clearly required to make an independent determination regarding whether the penalty imposed meets the reasonable and just cause standard. MCL 38.101; MSA 15.2001. Rather, the Court of Appeals held that, having reviewed the penalty and having found it not to be for reasonable and just cause, the commission's only recourse is to order the teacher reinstated, or, if the teacher has returned

to work, to order back pay. MCL 38.103; MSA 15.2003. In short, the commission can indeed exercise meaningful review of the local board's decision without improperly "deferring" to that body, even in the absence of any authority to impose its own desired discipline on the teacher.

Another of the statutory provisions cited by the plaintiff and the commission, and relied upon by the Court in *Long* as evidence of a legislative intent that the commission have all the same powers and duties as the local board, MCL 38.121; MSA 15.2021, in fact provides only that "[n]otice and conduct" of the hearing before the tenure commission shall be the same as that provided before the local board by MCL 38.104; MSA 15.2004. In any event, while MCL 38.104; MSA 15.2004 grants the parties certain rights, such as the right to choose either a public or private hearing before the board, the right to counsel, the right to subpoena witnesses, etc., it is *not* the basis of the board's right to discharge or discipline a teacher. That right is inherent in the board's authority to manage its school system, MCL 380.1201 *et seq.*; MSA 15.41201 *et seq.,* and is found in particular in various provisions of the tenure act.[5]

Only one provision of the tenure act expressly addresses the remedial powers of the commission. MCL 38.103; MSA 15.2003 provides that "if the decision of the controlling board is appealed and the tenure commission reverses the decision of the controlling board, the teacher shall be entitled to all salary lost" if the controlling board exercised

[5] MCL 38.101; MSA 15.2001 provides that discharge or demotion may be made only for reasonable and just cause, MCL 38.102; MSA 15.2002 gives the controlling board the right to decide whether to proceed upon the charges brought by the school superintendent, and MCL 38.103; MSA 15.2003 allows the local board to suspend a teacher pending a decision by *it* as to discharge or demotion.

its right to suspend the teacher without pay pending the commission's decision. Thus, the single section of the act actually to address the commission's remedial power in the event of improper local action speaks only of the right to back pay, and the concomitant right to reinstatement from the suspension.

C

Ultimately, the question in this case is one of legislative intent. I disagree with the commission that the Legislature intended, when it created the commission to act as a "board of review" to oversee the actions of the local boards, to give it the power to determine not only whether the local board's action was for reasonable and just cause, but also to modify that action, thus imposing its own form of discipline upon the teacher. The Legislature did not intend to create a "super-school board" in the commission, as this Court's opinions in the *Rehberg* cases in particular make clear, and as the statute itself makes clear, by identifying the commission as a board of *review*.

I agree with Commission Member Gibson, writing in dissent in *Private Decision,* STC No 82-69, May 7, 1984, p 3, that

> [i]f this Commission is permitted to "fine tune" the penalty imposed, all semblance of local administrative control would be lost. This Commission, far removed from the values and sentiments of the community, could interpose its views for those of the representatives of the local electorate. This Commission would be the entity with the ultimate power to make employment-related decisions, thereby rendering any proceedings prior to the filing of a tenure appeal the very essence of idle ceremony. Thus, it is no accident that the statute

only provides this Commission with authority to
order one remedy—reinstatement with payment of
lost salary. MCL 38.103; MSA 15.2003.

While it may be overstatement to say that the
board's function would be reduced to "idle cere-
mony" if the commission in fact retained this
authority,[6] the point is well taken. As the Court of
Appeals stated on remand, by modifying the
plaintiff's dismissal, the commission "took it upon
itself to decide how best to discipline the teacher.
There is no provision in the act which expressly or
impliedly grants this power to the [commission]."
*Lakeshore Bd of Ed v Grindstaff (On Second Re-
mand),* 177 Mich App 225, 228; 441 NW2d 777
(1989).

The majority contends that it would not be
"consistent" with the purposes of the teacher ten-
ure act to require the reinstatement of a teacher
with back pay, without the imposition of any
discipline, where the commission finds that the
charges against the teacher have been proved but
the discipline imposed is not reasonable. Yet, this
construction of the act is undoubtedly more consis-
tent with its purposes and its language than is the
majority's decision to allow the commission to
impose its own sanction on the teacher, thereby
"depriv[ing] local governing bodies of administra-
tive control of teachers . . . ." *Rehberg I, supra,*
pp 547-548. While the statutory scheme suggested
by the majority, allowing the commission to exer-
cise such authority, may in fact be a plausible one,
I am not convinced that it is the one that the
Legislature intended when it established the com-
mission to act as a board of *review,* with the

[6] For example, a record is still made, upon which the commission
relies at least in part, the teacher might not appeal to the commis-
sion.

authority to determine anew only "issues of fact
and law," *Long, supra,* p 327, of which whether to
impose a particular penalty on a teacher is nei-
ther.

A final argument against the existence of a
legislative intent to grant the commission full
authority to modify the penalty imposed by the
local board is the fact that, taken to its logical
extreme, it would require us to conclude that the
Legislature intended that the commission have the
power not only to *reduce* the discipline imposed,
but also to *increase* it. There is simply no support
for that proposition either in the statute itself or
in the case law. Indeed, such an interpretation
would be contrary to the very purpose of the act—
to give teachers *greater* employment security—as
well as the commission's directive to carry out
that purpose. Yet, such authority is unquestion-
ably within the scope of the commission's view of
its de novo review authority.[7]

### III

I agree with the Court of Appeals that the
commission exceeded its statutory authority by
reducing plaintiff's discharge to a one-semester
suspension. The commission may not decrease,
increase, modify, or adjust the penalty imposed by

[7] The majority points out that the school board may not appeal its
own decision to the commission, and thus concludes that there is "no
basis on which the Tenure Commission might impose a greater
discipline than that imposed by the school board." *Ante,* p 357, n 42.
The majority misses the point. The fact that the commission is
unlikely ever to exercise that authority does not answer the charge
that its reading of the act would allow it to do so. The commission
and the plaintiff contend that the commission's authority and duty to
review the matter on appeal require it to determine "anew and as
[an] original question[ ]" what penalty to impose. Thus, under their
reading of the act, the discipline imposed could conceivably be so
unreasonably slight (although still appealed by the teacher) as to
require modification upward. The majority's reading of the act would
not preclude such action by the commission.

the local school board on review. Where the teacher's misconduct does not warrant the discipline imposed, i.e., where the penalty imposed is not for reasonable and just cause, the commission is empowered only to order the teacher's reinstatement, with back pay. I would, therefore, set aside the decision of the Tenure Commission to reduce the plaintiff's discharge to a one-semester suspension.

However, I am not prepared to affirm the initial decision of the Court of Appeals in this case reinstating the plaintiff's discharge.[8] The commission found that the charges against the plaintiff were proved by a preponderance of the evidence, but reduced the discharge to a suspension because it found discharge " 'simply too severe *for the conduct of this particular teacher.*' " *Ante,* p 346, n 8 (emphasis added). Since the commission proceeded under the assumption that it did have the authority to modify the penalty imposed, it never squarely addressed the question whether the plaintiff's discharge could survive scrutiny for reasonable and just cause, although it did specifically conclude that " 'a serious penalty is appropriate here.' " *Ante,* p 346, n 8. I would, therefore, remand this matter to the commission for further consideration of the question whether the plaintiff's discharge was for reasonable and just cause in light of the above discussion. I would not retain jurisdiction.

BRICKLEY and GRIFFIN, JJ., concurred with RILEY, C.J.

---

[8] In *Lakeshore Public Schools Bd of Ed v Grindstaff,* unpublished opinion per curiam of the Court of Appeals, decided March 11, 1988 (Docket No. 98748), the Court held that the commission's decision to reduce the plaintiff's discharge to a suspension was "not supported by competent, material, and substantial evidence." *Ante,* p 343. On remand, the Court of Appeals addressed only the question of the commission's authority to reduce the discipline imposed.